Hon. ROBERT RYAN,
Hon. JOHN M. RAGAN, } Commissioners.
Hon. FRANK IRVINE,

---

## FREEMAN P. KIRKENDALL ET AL. V. CITY OF OMAHA.

FILED JANUARY 16, 1894.   No. 4813.

1. **Change of Grade of Streets**: DAMAGES: EVIDENCE. After a witness had stated what in his opinion had been the effect of changing the grade of a street upon property adjacent thereto owned by the plaintiffs in error, it was not reversible error to refuse to allow such witness further to testify that in his opinion no cause other than the said change of grade contributed to an asserted decrease in value of said adjacent property, especially in view of the fact that one of the plaintiffs in error had previously given negative testimony of the same character as that sought to be introduced, which negative testimony was in no way questioned or contradicted upon the trial.

(1).

Kirkendall v. City of Omaha.

2. ————: ————: ————. It was not error to reject evidence offered as to the general tendency of values of other real property than that of plaintiffs in error, in its vicinity, extending over the period during which and immediately following that in which the change of grade complained of was made.

3. The special benefits which may be properly set off against damages are such as increase the value of adjacent property, and these benefits are none the less special because an increased value has been thereby added to many adjacent private properties other than that as to which a particular litigation is pending. Common benefits are such as are enjoyed by the public at large without reference to the ownership of private property adjacent to the public improvement out of which arose the benefits under consideration.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

The opinion contains a statement of the case.

*Montgomery, Charlton & Hall,* for plaintiffs in error, contending that there was error in the instructions, cited: *Wagner v. Gage County,* 3 Neb., 242; *Fremont, E. & M. V. R. Co. v. Whalen,* 11 Neb., 591; *Schaller v. City of Omaha,* 23 Neb., 332; *Chicago, K. & N. R. Co. v. Wiebe,* 25 Neb., 544.

*W. J. Connell* and *E. J. Cornish,* for the city:

It was for the jury to determine whether or not the property had been damaged, and if so, whether or not the grade was the cause of the damage; but this must be determined from facts offered in evidence and not as conclusions of witnesses. (*City of Omaha v. Kramer,* 25 Neb., 490; *Burlington & M. R. Co. v. White,* 28 Neb., 167; *Roberts v. New York E. R. Co.,* 28 N. E. Rep. [N. Y.], 486.)

The instructions given were not erroneous. (*City of Omaha v. Schaller,* 26 Neb., 524; *Lowe v. City of Omaha,* 33 Neb., 587; *Bohm v. Metropolitan E. R. Co.,* 29 N. E. Rep. [N. Y.], 802; *Sutro v. Metropolitan E. R. Co.,* 33

N. E. Rep. [N. Y.], 334; *Hanscom v. City of Omaha,* 11
Neb., 37; *Lansing v. City of Lincoln,* 32 Neb., 470; 2
Dillon, Mun. Corp., p. 933; 2 Desty, Taxation, p. 1238.)

*A. J. Poppleton,* also for defendant in error.

RYAN, C.

The plaintiffs in this action, who are the plaintiffs in
error in this court, sought in the district court of Douglas
county, Nebraska, a recovery against the defendant on ac-
count of alleged injury to their property in blocks 9 and
12, in West Omaha, caused by the grading of Leavenworth
street on the south side of block 12, and the streets con-
necting therewith, to-wit, Thirty-seventh and Thirty-eighth
streets, extending along the east and west sides of said
blocks. The plaintiffs claim that prior to the establishment
and working of said streets to their present grade their
property, described and set out in their petition, was on a
high and level elevation of considerable extent, and very
desirable and valuable for residence purposes; that by rea-
son of the grading complained of, deep cuts had been made
along the south side of said block 12, and on the east and
west sides thereof, and along the south and west sides of
block 9, which rendered the whole of said property much
less desirable than it was before, and caused the plaintiffs
to be damaged in the amount of $25,000, for which judg-
ment was asked. The defendant admitted that it was a
municipal corporation, and that the grades of Thirty-
seventh and Thirty-eighth, and Leavenworth, and First
and Second streets were established as plaintiffs alleged,
but denied each and every other allegation of the petition,
and denied that said property was damaged on account of
said grading. The defendant furthermore claimed in its
answer that plaintiffs' property was specially benefited and
improved in a sum equal to, or in excess of, any damage
sustained by the plaintiffs on account of the grading com-

plained of. The reply of the plaintiffs was in denial of each matter contained in the answer.

1. The first alleged error complained of arises in respect of the introduction of testimony of witnesses Robert Eason, Robert Nields, and D. V. Sholes. To Robert Eason was proposed the question following: "Q. If the grade had been left as it was before the city commenced grading in 1887, and Leavenworth street had been put to grade there on that basis, what would have been the effect on the market value of the property in general? In other words, was there anything that you know of to cause a depreciation in the market value of the property in question other than the grading of the streets in 1887 and 1888 by the city?" Accompanying this question was a tender of the evidence thereby sought to be elicited, in the following words: "That the only cause of the depreciation in the value of the property in controversy is the grading of the streets complained of, and that in the opinion of the witness there was no other ground for said depreciation." This witness was not required in the course of his evidence to give any estimate as to the value of the property affected, either before or after the grading complained of. The following testimony, however, had been elicited from him previous to the propounding of the question, upon the refusal to allow which error is predicated. This antecedent evidence was as follows:

Q. State what was the general effect of the grading of Leavenworth street as it was graded in 1887 and 1888, and also of the grading of Thirty-seventh and Thirty-eighth streets to conform to the grade of Leavenworth street, upon the market value of blocks 9 and 12, whether valuable or detrimental and injurious.

A. It was particularly detrimental and injurious to block 12. As to the value of the property on block 9, it did not affect it so materially,—only slightly in comparison with block 12.

Q. What would you say as to whether or not that detri-
mental effect would be of a large and serious character or
not?

A. It would be of a large and serious character on block
12.

This evidence, received without objection, was of the
same general tendency as was that sought to be elicited by
the question as to which an objection was sustained. In
the redirect examination of Mr. Coe, one of the plaintiffs,
this testimony was given:

Q. Is there any element that you know of, from your
experience and knowledge from real estate transactions and
the situation of property, that prevented the advancement
of your property like other property, other than the fact
of this deep cut on Leavenworth street?

A. None that I know of.

The evidence of Nields and Sholes, which was rejected,
was directed to the same proposition as was the rejected
evidence of Robert Eason. In reference to the rejected
evidence sought to be elicited from each of these witnesses,
it may not be improper to observe that the same testimony
was given by Mr. Coe as was sought to be introduced by
the three witnesses named. This evidence was in no part
of the record questioned or contradicted; neither was there
any evidence contrary to, or in qualification of, that of Mr.
Coe. The case was tried upon the theory that damages
were properly shown by proving the value of the property
before, as compared with its value after, the grading com-
plained of. Possibly it might have been better to have
qualified the question by limiting the valuation, under the
conditions last referred to, to what it was as affected by the
grading complained of; and yet, in effect, the same result
was obtained by the general evidence given, as well as by
the specific evidence, which has been referred to as having
been elicited from Mr. Coe.

2. It is claimed there was error in refusing to allow the

plaintiffs to show by Euclid Martin "that the general tendency of other property in West Omaha, situated like the property in question was before the grading of the streets in question, has been on the increase; that the other property has increased largely in value during the period named in the question, and that such is not the fact respecting the property in controversy, and that to this day it is less in value than it was before the grading of those streets, and that the reason of it is the grading of the streets." It seems to us that this testimony, if not entirely speculative in its nature, was dangerously near the dividing line. The opinion of Mr. Martin as to why the general tendency of the property in question was different from that of other property in West Omaha, could have been nothing but mere speculation on his part; and equally removed must have been his opinion as to the grading of the streets being the sole obstacle to the advancement of this particular property as compared with other property in West Omaha.

3. Counsel for plaintiffs in error insist that the court should not have submitted to the jury the question of special benefits to the plaintiffs in error in respect of benefits of like nature with those which had accrued to owners of other property along and adjacent to Leavenworth street. It is argued that such benefits fall rather within the category of general benefits than special benefits. This construction treats the word "general" as synonymous with the word "common," as applied to a particular neighborhood. Such restrictive force does not of necessity inhere in the use of that word, for, as applied to benefits, they may be either common to the general public, or common to a mere neighborhood, or to a part of a street. The word "common" is ordinarily understood to apply to the general public when not qualified by some word or phrase of limitation. The term "general benefits," when unqualified, should probably be accepted in the same sense as the term "common benefits;" that is to say, when there is no limitation expressed,

it should be deemed applicable to the general public rather than as embracing as general but a limited part of the public. In some respects there obtains between the matter under consideration and the distinction held as to private nuisances a certain analogy, which can best be illustrated by reference to the case of *Francis v. Schoellkopf*, 53 N. Y., 152. This was an action for damages sustained by the plaintiff by reason of the noisome stenches arising from the defendant's tannery, which rendered the enjoyment of plaintiff's dwelling uncomfortable and almost uninhabitable for herself and family, and prevented her renting another dwelling which she owned in that vicinity. It was objected by defendant's counsel that there could be no recovery in the case because the nuisance was public, and that the only remedy was by indictment. Grover, J., in delivering the opinion of the court, said: "The evidence showed that other houses in the vicinity were affected similar to those of the plaintiff. The ground of the motion [for a nonsuit] was, that as the stench injured a large number of houses, the nuisance was common, and therefore no one could maintain an action for his particular injury, the only remedy being an indictment for the common injury to the public. The error of this is obvious both upon principle and authority. The idea that if by a wrongful act a serious injury is inflicted upon a single individual a recovery may be had therefor against the wrong-doer, and that if by the same act numbers are injured no recovery can be had by any one, is absurd."

The term "special benefits" implies benefits such as are conferred specially upon private property by public improvement, as distinguished from such benefits as the general public is entitled to receive therefrom. In common with the general public the owner of adjacent property is entitled to travel upon an improved highway, and although by reason of the improvement such travel may be rendered easier or more pleasant, yet the benefit is general, because it

is enjoyed by the public in common with the owners of adjacent property. If the improvement should result in an increase in the value to adjacent property, which increase is enjoyed by other adjacent property owners as to the property of each exclusively, the benefit is special, and it is none the less so because several adjacent lot owners derive in like manner special benefits each to his own individual property. Such fact, if it exists, in no respect decreases the increment in value enjoyed by any one of the adjacent property owners, and by way of offset such increment should therefore be treated as a special benefit in favor of whomsoever it may arise. The theory followed by the court in the trial of the case, including the instructions to the jury, was correct. The judgment of the district court is

AFFIRMED.