GALVESTON, H. & S. A. RY. CO. v. HAR-
RIS. (No. 7755.)

(Court of Civil Appeals of Texas. Galveston.
Oct. 23, 1919. Rehearing Denied
Nov. 20, 1919.)

1. TRIAL ⬥➞86—OBJECTION TO EVIDENCE AD-
MISSIBLE FOR PARTICULAR PURPOSE.

In an action for the burning of grass on
leased land, an objection to testimony of plain-
tiff and his son as to reasonable value of the
grass, when they were not shown to be quali-
fied to testify as to its market value, was not
well taken, and the testimony was admissible to
show that the leased premises were used by
plaintiff exclusively for pasture and their rea-
sonable value therefor.

2. DAMAGES ⬥➞112—MEASURE OF DAMAGES
FOR BURNING GRASS.

The measure of damages for the negligent
burning of grass by a railroad company is
its market value for any use or purpose for
which it may be valuable to its owner, but in
the event that it has no market value then the
measure of damages is its value to its owner
for any uses to which he may put it.

3. DAMAGES ⬥➞188(2) — MARKET VALUE OF
GRASS BURNED.

In an action against a railroad company
for burning grass, evidence held to support find-
ing that the grass burned had no market value.

4. EVIDENCE ⬥➞113(11)—RENTAL VALUE OF
LAND FOR PASTURAGE AS MEASURE OF VALUE
OF GRASS DESTROYED.

In an action against a railroad company for
damages, the contention that the value of the
grass burned should be determined by what
rental other persons paid for pasture land is
not tenable, since what plaintiff and others paid
per acre may or may not have been the value
of the land for pasturage or other purposes at
the time of making the rental contract, and at
the time of the fire the value of the grass might
have been more or less than the rental price.

5. APPEAL AND ERROR ⬥➞1033(7)—HARMLESS
ERROR IN FAILURE TO FIND MARKET VALUE
OF BURNED GRASS.

The defendant railroad company, on ap-
peal from a judgment for damages for destruc-
tion of grass by fire, has no just reason of com-
plaint that the jury should have found from
the evidence that the land had a market value
for hay-making purposes, where the evidence
of such value showed a larger damage than
found by the jury.

6. DAMAGES ⬥➞174(3)—EVIDENCE OF EXPENSE
OF FEEDING CATTLE CAUSED SOLELY BY
BURNING OF GRASS.

In an action against a railroad company
for damages for the burning of grass, proof
that plaintiff had to spend 10 cents per head
per day to feed his cattle, which he would not
have been required to feed had the grass not
been destroyed, was admissible and could be
considered in arriving at the value to him
of the grass for the purpose for which he leased
the land.

7. DAMAGES ⬥➞174(3) — EVIDENCE OF DE-
STRUCTION OF GRASS BY FIRE.

In an action against a railroad company
for damages resulting from the burning of
grass, evidence as to the amount of hay plain-
tiff could have cut from the land had the grass
not been burned and the turf destroyed was
admissible, since plaintiff was entitled to have
the damages measured by the extent of the
injury to the grass and land for any lawful pur-
pose.

Appeal from District Court, Harris Coun-
ty; Hugh M. Potter, Special Judge.

Suit by J. S. Harris against the Galveston,
Harrisburg & San Antonio Railway Com-
pany. Judgment for plaintiff, and defend-
ant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Mc-
Means, Garrison & Pollard, all of Houston,
for appellant.

Pleasant F. Graves and H. L. Livingston,
both of Houston, for appellee.

LANE, J. This suit was brought by appel-
lee, J. S. Harris, against the Galveston, Har-
risburg & San Antonio Railway Company to
recover damages for the negligent burning by
the railway company of grass and hay on
208 acres out of a tract of 365 acres of land
situated in Harris county, held by Harris un-
der lease, and also for damages for the kill-
ing of the turf on the same.

He alleged that on or about the 24th day
of November, 1916, defendant negligently set
fire to the grass then located and growing on
said land, and to the hay thereon, and neg-
ligently caused the said grass and hay to be
burned and destroyed on a large part of the
land so leased and controlled by him, that is,
defendant negligently set fire to and negli-
gently caused to be burned the grass and hay
then growing on about 208 acres of the land
leased by plaintiff, to his damage $1,500,
and that by reason of said negligent acts and
conduct of defendant and the burning of
grass on said land the turf and roots of the
grass were so burned, damaged, and injured
by the fire that the same were killed, and
that plaintiff had been deprived of any and
all grass and hay thereby on said 208 acres
ever since the same was burned by defend-
ant, to his further damage to the 30th day
of March, 1918, in the sum of $500, and that
by reason of the killing of said turf and roots
of the grass plaintiff would thereby be de-
prived of any and all grass on said 208 acres
from March 30, 1918, up to the end of his
lease, to wit, October 31, 1920, to his further
damage in the sum of $500. He prayed for
judgment in the sum of $2,500.

Defendant answered by general denial.

The case was submitted to a jury upon
special issues, in answer to which they
found:

⬥➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(1) That defendant's section crew originated the fire on defendant's right of way that destroyed plaintiff's grass.

(2) That the acts of said section crew in originating the fire, or in failing to keep the fire which they originated confined to defendant's right of way, were negligence.

(3) That such negligence was the proximate cause of the burning of plaintiff's grass.

(4) That the grass which was destroyed had no market value for grazing pasturage or hay purposes at the time of the fire.

(5) That the actual value per acre to plaintiff of the grass for pasturage or hay-making purposes at the time in question was $3 per acre.

(6) That 208 acres of grass were burned by the fire in question.

(7) That the turf or roots of the grass was injured by the burning of said grass.

(8) That $312 if paid to plaintiff at the time of the trial would fairly compensate him for the injury to said turf and roots up to March 30, 1918 (and in this connection the jury were told that in estimating said damages they would exclude the value of the grass growing on the plaintiff's land at the time of the fire).

(9) That the plaintiff suffered no damage for injury to the turf or roots after March 30, 1918.

Upon said answers the court rendered a judgment in favor of the plaintiff for $936, with six per cent. interest per annum on $624 thereof from November 24, 1916, to April 24, 1918, and for all costs of suit. From this judgment the defendant appealed.

[1] By the first and second assignments it is insisted that the measure of damages for the negligent burning of grass is its market value for the purpose of its intended use at the time and place it was burned, but, in the event it has no market value, then the measure of damages is the reasonable value thereof for the use for which it was intended; that where there is a market value it alone is the true measure, and before the reasonable value can be shown it must be proved by witnesses qualified to speak that there is no market value; and that, as the witnesses J. S. Harris and his son, Henry Harris, were not shown to have been qualified to testify that there was no market value for the grass, the action of the court in permitting them to testify as to its reasonable value was harmful error to defendant, for which this case ought to be reversed.

Appellee, J. S. Harris, testified that he leased the 365-acre tract of land in August, 1915; that he moved upon it about September 1, 1915; that he was engaged in the dairy and stock-raising business, and had about 125 or 130 head of cattle; that during the years of 1916 and 1917 he had about 140 head; that at the time the grass was burned it was in good condition, extra good; that it was about 12 to 14 inches high and was worth $10 per acre when burned; that the grass was used for grazing his cattle; that the fire that burned the grass killed the stubble, the roots of the grass; that as a result of the fire he had no grass on the 208 acres burned, and had to feed his cattle during two winter seasons, as he had no grass on said land; that he had about 100 head of dry cattle; that at the time of the fire the grass in the condition it was did not in his opinion have any market value, because he would not have sold it, and did not know that he would have sold it had he desired to do so, and besides he had no right to sell it under the terms of his lease; that he heard of others who leased land in the neighborhood of his lease; that the land about there is used for pasturage purposes, but did not know what the lessees paid for the land leased; that he never cut any hay; never used the land for cutting and harvesting hay; that he was making his estimate as to what he thought the grass was worth because that was the only way he had to estimate its value; that in 1916 the grass burned would have produced a ton of hay or better to the acre at one cutting; that some people cut hay once a year and others twice a year; that hay was selling at $12 to $14 per ton in 1916, and in 1917 from $20 to $30 per ton.

Henry Harris testified that they pastured their cattle on the land before the fire; that before the fire they did not feed their dry cattle, but since the fire they fed these cattle in the winter because they had no grass; that he had heard that several parties had leased land in the neighborhood, but did not know what they paid; that under the circumstances this grass, this range grass for grazing purposes, had no market value; that the reason he said the grass had no market value was because he did not know what land was leasing for and what grass was bought and sold for out there for grazing purposes, and another reason was that their lease did not authorize the subleasing of the land.

While these witnesses stated that in their opinion the burned grass had no market value for hay or pasturage purposes, they amplified this statement by giving all the facts relative to the value, and finally concluded with the statement that they did not know whether it had a market value or not and did not know how much, if any, land was leased in that neighborhood; in other words, the effect of such evidence was to show that they did not know whether it had a market value or not. The testimony was not an unqualified statement that the burned grass had no market value.

The effect of this testimony, we think, is that the witnesses knew of the existence of

no fact or facts which gave the grass any market value.

We have reached the conclusion that the testimony of the witnesses, when considered as a whole, is not subject to the objection urged by appellant, and that it was admissible as tending to show that the leased premises were used by plaintiff exclusively for pasturing his cattle, and the reasonable value thereof for such purposes.

[2] It is well settled that the measure of damages for the negligent burning of grass is its market value for any use or purpose for which it may be valuable to its owner, but in the event it has no market value, then the measure of damages is its value to its owner for any uses to which he may put it. Steger v. Barrett, 58 Tex. Civ. App. 331, 124 S. W. at page 176; Ft. Worth & N. O. Ry. Co. v. Wallace, 74 Tex. 581, 12 S. W. 227; Railway Co. v. Anderson, 173 S. W. 908; Ft. Worth & D. C. Ry. Co. v. Hapgood, 201 S. W. 1040.

Both appellee and his son, Henry, who was in charge of the premises, in substance testified that so far as they knew the grass had no market value, and that they thought it had no such value. They also testified to facts and circumstances tending to show that the grass had an actual value to its owner for pasturage purposes greatly exceeding the amount of damages found by the jury.

We think that the opinion of the Supreme Court in the Wallace Case, 74 Tex. 581, 12 S. W. 227, entirely eliminates any merit that might be urged as existing in appellant's contention on this phase of the case. The court there said:

"She [plaintiff] claimed that the fire destroyed grass of the value of $650, fence of the value of $200, and that the injury to the land by burning the turf and grass roots amounted to $375. The averments in reference to the grass * * * were 'that said 130 acres so burned off was at the time covered with a fine coat of grass of luxuriant growth, which she had reserved for the wintering of her stock, and which she had begun to use for that purpose only a short time prior to the said burning; that said grass was very valuable, to wit, of the value of $5 per acre, and that by reason of the loss and destruction of the same * * * she was deprived of her only winter feed for said stock; that she sustained damage by reason of the loss of said grass in the sum of $650.'

"The court instructed the jury that in estimating the damages to which plaintiff might be entitled they would look to the market value of the grass destroyed at the time and place where it was, and that they might consider the market value for pasture or hay purposes; there being much evidence as to the value for either purpose. It is urged that it was error so to charge, and the ground of the objection we understand to have been that there was no averment as to the particular manner in which plaintiff desired to use the grass. Such an averment was not necessary. The grass belonged to the plaintiff, and, if entitled to recover at all, she was entitled to the market value of the grass as it stood, to be ascertained by its value for any legitimate use. Many witnesses had testified to its value if to be used for pasturage, as had many if it was to be used to make hay; but they all had reference to the value of the grass as it stood at the time it was destroyed. * * * It is not the right of one through whose wrongful act an injury has been done to the land of another to have the measure of damages fixed by the effect the injurious act may have on the land if used for some purpose other than that to which it was applied or desired to be applied by its owner; but it is the right of the owner to have his damages measured by the extent of the injury to the land used for any lawful purpose to which he had appropriated it, desired to appropriate it, or to which it is adapted. Railway v. Hogsett, 67 Tex. 687, 4 S. W. 365. * * *"

It will be noted that plaintiff in the Wallace Case had specifically alleged the purpose for which she was to use said grass, viz. pasturage; yet she was allowed to prove its highest value for other uses.

The Wallace Case was followed in the later cases of Railway v. Anderson, 173 S. W. 908, Railway v. Hapgood, 201 S. W. 1040, and Railway v. Matthews, 3 Tex. Civ. App. 493, 23 S. W. 90, in all of which the proposition is asserted that plaintiff is not restricted to evidence of the use for which his property was at the time intended or made by him, but its value is determined by evidence of any use for which such property was valuable or could be used; and the case which appellant has cited as supporting its proposition as to market value were cases in which the question was not raised as to the value of same for other purposes than that for which actually used; so that the decisions so referred to are not in point on this phase of the case. But, notwithstanding that, the courts in those very cases refer to the Wallace Case and Matthews Case, supra, and quote portions of the very opinion above quoted as being the law.

The first and second assignments are overruled.

[3] The effect of the third assignment is that, as there was such a degree of certainty that the grass burned had a market value for the uses intended for it by its owner as to render any other conclusion wrong, the finding of the jury that it had no such value should have been set aside and a new trial ordered.

We overrule the assignment. There was evidence showing that the land upon which the grass burned was growing was leased and used by plaintiff exclusively for grazing or pasturage purposes, and that the grass had no recognized or ascertainable market value. There was also evidence showing that the grass burned was a part of a tract of 365 acres leased by plaintiff and was the best grass on the tract; that it was burned on the 24th day of November after the season for

cutting hay was over, and was valuable for pasturage purposes only. E. R. Taylor, introduced as a witness by appellant, testified in part as follows:

"I do not think there could be a standard recognized market value for grass for pasturage purposes at any particular time, because I do not think you could set a price on land that way. * * * I am telling you what it leased for in my neighborhood."

All the evidence offered by appellant in attempting to show that the grass had a market value was to the effect that prairie land situated some miles distant from appellee's land, and further from Houston, was being leased for pasturage purposes at 50 cents to $1 per acre per year. None of the witnesses undertook to testify to the value of the particular grass burned. There was no showing that these leased lands contained grass of like kind and quality or of the same value as that destroyed by the fire.

[4] It seems to be the contention of appellant that the value of the grass destroyed should be determined by what rental other persons paid for pasture land leased by them. This contention is not tenable. What appellee or others paid per acre as a rental may or may not have been the value of the land for pasturage purposes or for any other purpose at the time of making the rental contract. At the time of the fire the value of plaintiff's grass might have been much more or less than the rental price. Chicago, R. I. & G. Ry. Co. v. Word, 207 S. W. 902.

[5] We think the evidence sufficient to support the finding of the jury. But we might suggest here that we can see no just reason for complaint by appellant, if any such there is, that the jury should have found from the evidence that the land had a market value for hay-making purposes, because, if the value must be fixed for such purposes, there was evidence showing that the land would yield one or more tons of hay to the acre, and that such hay was worth, at the time of the fire, $10 to $12 per ton, thus showing a much larger damage than that found by the jury.

We overrule the fourth, fifth, and sixth assignments. After a careful examination of the plaintiff's petition, we think the allegations sufficient for the admission of the evidence complained of in the sixth assignment. Pickering Lumber Co. v. Childress, 206 S. W. 573. We also think that the evidence as a whole is sufficient to support the judgment rendered. We are unable to say from the evidence that the verdict of the jury is excessive in any respect, as insisted on by the fourth and fifth assignments.

[6] Appellant's seventh assignment is as follows:

"The court erred in permitting the plaintiff to testify, over the objection of the defendant, that it costs him 10 cents per day per head for the feeding of his cattle after the grass was burned, for the reason that the same is an opinion and conclusion of the witness, and is not the best evidence, the plaintiff having shown that he knew the amount of feed purchased during the fall of 1916 and 1917, and the plaintiff's damages, if any, were limited to the actual amount of feed purchased, and the plaintiff should have been required to show the actual amount of feed purchased, and the price paid therefor, and not been allowed to estimate the amount it had cost him per head, such knowledge being in the possession of and within the power of the plaintiff to show the actual amount of feed purchased and price paid therefor."

The assignment cannot be sustained. Appellee testified that because of the loss of his grass he had to feed about 100 head of cattle which he would not have been required to feed if his grass had not been burned; that he had to feed these cattle from the first of December, 1916, to the latter part of March, 1917, and that it cost him 10 cents per head per day during this period to feed said cattle.

We are unable to conceive why it was thought incumbent on appellee to show how much feed he bought before he could explain how much of it he fed to the cattle in question. We think it reasonable to assume that from the gross amount of feed purchased appellee fed some 20 or 30 milk cows which he testified he owned and which he says he fed independent of the pasture. We may also assume he also fed some of the feed to his horses, mules, and other stock not of the 100 head in question. It was not error to admit the testimony. Proof of the fact that appellee had to expend 10 cents per head per day to feed his cattle, which he would not have been required to feed had his grass not been destroyed, was admissible and could be considered in arriving at the value to him of the grass for the purpose for which he leased it.

[7] By the eighth assignment it is insisted that—

"The court erred in permitting plaintiff to prove, over the objections of the defendant, the amount of hay that he could have cut from the said land, and the amount of money that he could have received from said pasture by pasturing other people's cattle, for the reason that the plaintiff had not sued for the value of the hay that he could have cut from said land that was burned, or the amount of money that he could have made by renting it to other people for pasturage purposes, but had only sued for the value of the grass destroyed, as well as the damages to him by reason of the destruction of the turf, if any."

It will be noted from the statement of the pleadings of plaintiff set out in the first part hereof that the plaintiff in effect alleged that the grass and hay upon his land on the 24th day of November, 1916, was destroyed through the negligence of appellant on said date; that such destruction was to plaintiff's damage in the sum of $1,500; that the fire

which burned and destroyed his grass and hay also so damaged and injured the turf and roots of the grass on 208 acres of his land that he had been deprived of any and all grass and hay on said land ever since the burning, to his further damage in the sum of $500, etc.

The testimony the admission of which is complained of is that of the plaintiff as to the quantity of grass and hay his land would have produced per acre and its value per ton from the 24th day of November, 1916, to March 18, 1917, and for the year from March 18, 1917, to March 18, 1918, and the testimony of the witnesses Walter Reed and S. L. Haines to the effect that they knew the customary rate for pasturing stock and cattle on grass like the plaintiff's in 1916 and 1917 per month per head; that the customary rate paid for pasturage purposes in that community for grass like plaintiff's was from 75 cents to $1.50 per head per month for the whole year, and that the plaintiff's pasture could have taken care of 150 to 200 head of cattle.

Under the rule laid down in the case of Railway v. Wallace, 74 Tex. 581, 12 S. W. 227, we think the testimony complained of was admissible. The Supreme Court in the Wallace Case said:

"The grass belonged to the plaintiff, and, if entitled to recover at all, she was entitled to the market value of the grass as it stood, to be ascertained by its value for any legitimate use. Many witnesses had testified to its value if to be used for pasturage, as had many if it was to be used to make hay."

And again:

"It is the right of the owner to have his damages measured by the extent of injury to the land used for any lawful purpose to which he had appropriated it, desired to appropriate it, or to which it is adapted. Railway v. Hogsett, 67 Tex. 687, 4 S. W. 365."

We have examined and considered assignments 9 to 12, inclusive, and have, for reasons already given under the consideration of other assignments, reached the conclusion that none of them present reversible error.

Finding no error committed in the trial of this case as should require at our hands a reversal of the judgment rendered by the trial court, such judgment is affirmed.

Affirmed.