GOLDFORB v. GULF, C. & S. F. RY. CO.[*]
(No. 10027.)

(Court of Civil Appeals of Texas. Fort Worth. June 24, 1922. Rehearing Denied July 1, 1922.)

1. Eminent domain ⬅145(2)—Special benefit accruing from construction of railroad may be set off against damages.

Damages to abutting property caused by the construction and operation of a railroad line and spur tracks in a street may be offset by special benefits accruing by reason of such construction, but general benefits resulting to the owner and enjoyed in common with the public cannot be offset.

2. Eminent domain ⬅145(2)—Enhancing value of property rendered available for trackage purposes is "special benefit."

Enhancement in market value on account of abutting property being made available for trackage purposes by reason of the construction

of a railroad spur track in the street is a "special benefit," which can be considered by the jury as an offset to any special injuries to such property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Benefits.]

**3. Evidence ⚏142(3) — Remote evidence of price of other property admissible in condemnation proceedings.**

In an action for depreciation in value of abutting property caused by construction of a railroad track in 1919, evidence as to the price paid by witness in 1913 for property in close proximity to plaintiff's property was not objectionable as being too remote, in view of the fact that such evidence was adduced on cross-examination after the witness had testified strongly in plaintiff's favor.

**4. Eminent domain ⚏298—Evidence showing undesirability of property for residential purposes admissible.**

In an action for the depreciation in value of abutting property caused by the construction of a railroad track, evidence that plaintiff's property was not in a desirable location for residential purposes was admissible.

**5. Eminent domain ⚏299—Evidence showing enhancement of value of property admissible.**

In an action for depreciation in value of abutting property caused by the construction of a railroad track, evidence that the value of property was enhanced because it was rendered available for trackage purposes was admissible.

**6. Appeal and error ⚏1050(2)—Evidence that automobile stood on property not prejudicial.**

In an action for depreciation in the value of abutting property caused by the construction of a railroad track, evidence that an old broken-down automobile stood at the plaintiff's property for about six weeks to two months, if irrelevant, was not prejudicial.

**7. Eminent domain ⚏297—Evidence showing nearby property was used for immoral purposes admissible.**

In an action for depreciation in value of abutting property caused by the construction of a railroad track, evidence that property in vicinity of plaintiff's property, at the time of the construction of the track, and prior thereto, was probably devoted to immoral purposes, was admissible as tending to show the depreciation of the market value of the property for residential purposes.

**8. Appeal and error ⚏1050(1)—Evidence that witness purchased from Jew not prejudicial.**

In an action for depreciation in the value of abutting property caused by the construction of a railroad track, evidence that witness had purchased her property, which is situated in the vicinity of plaintiff's property, from a Jew, while objectionable, could not have influenced the jury's verdict.

**9. Eminent domain ⚏298—Street commissioner's testimony that railroad complied with ordinance giving permission to build track admissible.**

In an action to recover for depreciation in the value of abutting property caused by the construction of a railroad track in a street, testimony of a city street commissioner that the railroad, after building the track, restored the street to good condition and complied with the ordinance granting permission to build the track, was admissible.

**10. Appeal and error ⚏1064(1)—Instruction to disregard argument as to effect of jury's findings not prejudicial.**

An instruction, given during the closing argument, to disregard any argument of counsel as to the effect that the jury's findings would have on the judgment rendered, was not prejudicial.

Error from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by I. Goldforb against the Gulf, Colorado & Santa Fé Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Ocie Speer and John W. Estes, both of Fort Worth, for plaintiff in error.

Lee, Lomax & Wren, of Fort Worth, for defendant in error.

DUNKLIN, J. The Gulf, Colorado & Santa Fé Railroad Company built a track from its main line up the center of Second street to Commerce street in the city of Fort Worth, and at the same time constructed spur tracks to reach within a few feet of the sidewalk in front of the property abutting on both sides of the street, thus making such abutting property available as trackage property. I. Goldforb owned a lot abutting on the street of 75 feet frontage and extending back 100 feet. He occupied and claimed that property as his homestead. He instituted this suit against the railroad company, alleging that the construction and operation of those tracks depreciated the market value of his property, and claimed damages for such depreciation. A judgment was rendered in favor of the railroad company, and plaintiff has prosecuted this appeal.

The case was tried before a jury on special issues. Those issues and the findings of the jury thereon are as follows:

"(1) What was the reasonable market value of plaintiff's property immediately prior to the time of the construction of defendant's railway tracks in question? Answer: $4,000.

"(2) What was the reasonable market value of plaintiff's property immediately after completion of defendant's railway tracks in question? Answer: $7,500.

"(3) Was plaintiff's property enhanced in value by 'general benefits,' as that term is hereinafter defined to you, by reason of the construction of defendant's railway tracks in question? By the expression 'general benefits,' as used in this special issue No. 3, is meant such benefits as enhance the value of property in the neighborhood of plaintiff's property generally, caused by the construction of defendant's railway tracks in question. Answer: No.

"(4) If you have answered special issue No. 3 in the negative, you need not answer this question; but, if you have answered it in the affirmative, then answer further: What amount, if any, was plaintiff's property enhanced in value by general benefits by reason of the construction of defendant's railway tracks in question? Answer: ———."

The evidence introduced was ample, we believe, to support the findings of the jury as to the value of the property before and after the construction of the railway track, and hence all assignments presenting contentions to the contrary are overruled.

In the argument of appellant in support of his assignment of error to the finding of the jury in answer to special issues Nos. 2 and 3, it is admitted that there was a great array of testimony to the effect that the market value of the property was enhanced because it was made available as trackage property; but it is insisted that such enhancement was by reason of general benefits to plaintiff's property in common with other like property in the same neighborhood, and that such benefits were not peculiar and special to plaintiff's property as distinguished from other property abutting on the same street. By reason of those facts, it is insisted, in effect, that such benefits to plaintiff's property were general benefits, and therefore could not be considered by way of offsets to injuries in other respects done to plaintiff's property by reason of the construction of the track. And in a brief for appellant the following is said:

"As has been indicated under the last preceding subdivision of the argument, the real question involved in this appeal is whether or not the enhanced value enjoyed by plaintiff's property by reason of the laying of defendant's tracks in East Second street was a general or special benefit within the meaning of those oft-used expressions. If, as a matter of law, it can be said the benefits were special to plaintiff's property, then, of course, the jury having found upon conflicting evidence that there had been no depreciation in value, the appeal is very much simplified. On the other hand, if as a matter of law such benefits are general benefits, or if it is a question of fact as to whether they are special or general, then undoubtedly many errors have been committed and the case must be reversed."

[1] It is hardly necessary to cite authorities to support the general rule that in such cases as the present suit damages to the complainant's property may be offset by special benefits accruing thereto by reason of the construction of the railroad, but that general benefits resulting to the owner and enjoyed in common with the public at large cannot be so offset. See Crystal City & U. R. Co. v. Boothe (Tex. Civ. App.) 126 S. W. 700; Routh v. Texas Traction Co. (Tex. Civ. App.) 148 S. W. 1152; G., C. & S. F. Ry. Co. v. Fuller, 63 Tex. 467; 20 Corpus Juris, p. 822, § 259.

[2] But according to the great weight of authority we are of the opinion that the benefits resulting to the owner of property, by reason of its enhancement in market value on account of it being made trackage property as a result of the construction of the railway track, were special benefits which could be considered by the jury in offset to any special injuries to the property claimed to have been caused by the construction of the track.

In 20 Corpus Juris, p. 824, under the title of "Eminent Domain," the following is said:

"A benefit may be special in respect to particular property although such benefit is shared by other property in the vicinity, as in the laying out or widening of a highway."

In 10 R. C. L. p. 179, the following is said on the same subject:

"The majority of courts hold that only special benefits can be considered, although the mere fact that all the property on the same street participated in the benefit does not make the benefit general. In other words, both neighborhood and peculiar benefits may be set off, but not general benefits."

To the same effect many authorities might be added, such as City of Dallas v. Kahn, 9 Tex. Civ. App. 19, 29 S. W. 99, by the Dallas Court of Civil Appeals; Met. W. S. El. Ry. Co. v. Stickney, 150 Ill. 362, 37 N. E. 1098, 26 L. R. A. 773; Brand v. Union Elevated Ry. Co., 258 Ill. 133, 101 N. E. 247, L. R. A. 1918A, 878, Ann. Cas. 1914B, 473; Blair v. Charleston, 43 W. Va. 62, 26 S. E. 341, 35 L. R. A. 852, 64 Am. St. Rep. 837; Swift & Co. v. Newport News, 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; Nelson v. City of Atlanta, 138 Ga. 252, 75 S. E. 245; Abbott v. Cottage City, 143 Mass. 521, 10 N. E. 325, 58 Am. Rep. 143; Kirkendall v. City of Omaha, 39 Neb. 1, 57 N. W. 752; St. L. O. H. & C. Ry. Co. v. Fowler, 142 Mo. 670, 44 S. W. 771. We do not believe that the decisions in Pochila v. Railway, 31 Tex. Civ. App. 398, 72 S. W. 255, or any of the other cases cited, when properly construed, are in conflict with the authorities just cited.

Quite a number of other assignments are presented to the admission and exclusion of testimony. We have concluded that all of those assignments should be overruled, in view of the statement contained in the brief of appellant's counsel, quoted above, to the effect that the real question involved on this appeal is whether or not the benefits to the property in controversy were general or special benefits, and since we have reached the conclusion that any error in the rulings, complained of in the group of assignments last referred to, was not reasonably calculated to cause, and probably did not cause, the jury to return a verdict materially different from that which they would have returned in the absence of such rulings. One of those assignments was to the exclusion of

testimony offered by plaintiff to show discomfort and annoyance to plaintiff by the operation of trains during the construction of the track, over objection of the defendant that such testimony was immaterial to show any permanent injury to the property, which was the only issue presented in plaintiff's petition.

[3] Another complaint is of the admission of testimony of the plaintiff's witness Race, on cross-examination by the defendant, as to the price he paid for his property in the year 1913. His property was in close proximity to that of the plaintiff, and he had testified to a much higher value of his property at the time the track was built in 1919 than the cost price, and had given other testimony strongly favorable to plaintiff. The railroad track was built in September, 1919, and the objection to the testimony was upon the ground that it was too remote and therefore was irrelevant. In view of the fact that this testimony was brought out on cross-examination, it may be doubted that the ruling was erroneous, in any event.

[4, 5] Two other witnesses were permitted to testify, over plaintiff's objection, to the effect that plaintiff's property was not in a desirable location for residential purposes, and that it had been enhanced by the building of the railroad because it had thereby become more valuable as trackage property. We believe that that testimony was admissible.

[6, 7] Another assignment relates to the admission of the testimony of one witness tending to show that about the time this track was built, and prior thereto, property in the vicinity of plaintiff's property had probably been devoted to immoral uses, and another witness testified that she had seen an old broken-down automobile standing there at plaintiff's property for about six weeks or two months.

If the testimony concerning the automobile was irrelevant, we do not think it probable that the same materially prejudiced plaintiff's case. If houses in the same neighborhood had been used for immoral purposes, and that use had been a matter of common knowledge with the people in that neighborhood, as indicated by the testimony of the other witness, we are not prepared to say that that fact would not tend to depreciate the market value of plaintiff's property for residential purposes. In fact, we are inclined to believe that it would do so.

[8] Another witness for the plaintiff testified on cross-examination by the defendant that she had purchased her property, which she now owns and which is situated in the vicinity of plaintiff's property, from a Jew. While that testimony was objectionable, we fail to perceive how it could reasonably have influenced the jury in reaching the verdict returned.

[9] A city street commissioner of Fort Worth was introduced as a witness for the plaintiff, and after testifying upon direct examination he further testified, on cross-examination by defendant, to the effect that the railroad company, after building the track, had restored the street to a good condition and had complied with the terms of the city ordinance giving permission to build a track in that street. We think that evidence was admissible.

[10] Another assignment is presented to the action of the court in instructing the jury, during the closing argument of facts to them by plaintiff's counsel, to disregard any argument of counsel as to what effect their finding in answer to any issue submitted would have on the judgment to be rendered in the cause. It is insisted that the argument so made by counsel for plaintiff was not susceptible of that construction, and several pages in the transcript are taken up with a report of what counsel said in that argument. It is unnecessary for us to determine whether the argument so made was subject to the criticism, since, if it was not so, it is altogether improbable that the instruction given by the trial judge had any effect on the jury detrimental to appellant.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.