## CITY OF WACO v. CRAVEN.
### No. 1261.

Court of Civil Appeals of Texas. Waco.

Nov. 17, 1932.

884

John McGlasson, Allan McDonnell, McClellan, Lincoln & Williams, all of Waco, for appellant.

Weatherby & Rogers and Tom P. Scott, all of Waco, for appellee.

ALEXANDER, J.

This is a companion case to the case of City of Waco v. Rook (Tex. Civ. App.) 55 S. W.(2d) 649, this day decided. This suit was brought by Mrs. Mattie L. Craven against the city of Waco for damages occasioned to her land by reason of the building of Lake Waco. She alleged that during the years 1929 and 1930 the city of Waco, for the purpose of providing an adequate water supply for its citizens, erected a large dam across the Bosque river, and that the plaintiff owned a farm of about 77 acres of land located a short distance below the dam; that said dam is about one mile in length, and is 60 feet high, is equipped with a large number of floodgates, and impounds more than thirteen billion gallons of water. Plaintiff further alleged that said dam is an earthen dam, and that the north end thereof was built on a gravel base, which allows the water to seep through under the dam, and, on account of the enormous pressure caused by the impounding of the water said dam is liable to break.

Plaintiff further alleged that the city changed the course of the water below said dam by the erection of a new channel and levees which caused the water which flows through said flood gates to overflow and flood plaintiff's land; that plaintiff's land prior to the building of the dam was set with pecan trees, and was subirrigated by an underflow of water; that the south end of the dam, which is the part thereof immediately upstream from plaintiff's land, was built on a rock base, and as a result the underflow of water has been cut off, causing her trees to die. It was alleged that the land was damaged in many other ways, not necessary to here mention, as the result of the erection of the dam and its appurtenances. The plaintiff prayed for damages for the permanent injury to her land in the sum of $38,500.

The defendant directed a general demurrer and numerous special exceptions to plaintiff's petition, entered a general denial, and alleged specifically that it was a municipal corporation, charged with the duty of providing an adequate water supply for its citizens, and that under lawful authority granted it by the state of Texas it had impounded the waters of the Bosque river, a navigable stream, by the construction of a dam for such purpose, that said dam had been carefully and properly constructed on property acquired and owned by the city for such purpose, and that the construction of the dam and its operation had in no manner injured the plaintiff.

A trial by jury resulted in a verdict and judgment for the plaintiff for the sum of $7,-700. The defendant appealed.

It is shown by one of the bills of exception in the record duly approved by the trial judge that, after the jury had retired to

consider their verdict, and after they had had the matter under consideration for about twenty-four hours, the jury, through a deputy sheriff, informed the trial judge of their desire to have him come to the jury room. The trial judge, out of the presence, and without the knowledge or consent, of the parties or their attorneys, entered the jury room and discussed with the jury for a period of from three to five minutes the probability of the jury reaching a verdict in the case. The appellant, immediately upon learning of such conduct on the part of the trial judge, moved for a mistrial, and, after the jury had returned its verdict into open court, moved for a new trial. It is not contended that the trial judge was actuated by any improper motives, nor does it appear that anything was said by him that influenced the jury in reaching their verdict. However, this does not appear to be material. It is well settled that the trial judge may communicate with the jury with reference to the case only in open court. When the trial judge violates these statutes by so communicating with the jury at a place not in open court, error is committed, and reversal must follow, regardless of the question of injury. This requires a reversal of the case. Revised Statutes, art. 2197; Gerneth v. Galbraith Foxworth Lumber Co. (Tex. Com. App.) 38 S.W.(2d) 775–777; Texas Midland R. R. Co. v. Byrd, 102 Tex. 263, 115 S. W. 1163, 20 L. R. A. (N. S.) 429, 20 Ann. Cas. 137; Parker v. Bailey (Tex. Com. App.) 15 S.W.(2d) 1033, 1035 (opinion approved); Corn v. Crosby County Cattle Co. (Tex. Com. App.) 25 S.W.(2d) 390; Lorenzen v. Keenan (Tex. Civ. App.) 266 S. W. 839; Smith v. Harris (Tex. Civ. App.) 252 S. W. 836.

■■ There are certain other assignments which we deem it proper to discuss in view of another trial. The appellant excepted to the allegations in plaintiff's petition that the dam as constructed by the city was in danger of breaking and was liable to break at any time, and that as a consequence thereof said dam presented a constant menace and danger to plaintiff's land. It is appellant's contention that these allegations present mere conclusions of the pleader, and that the appellee by such allegations was attempting to recover for depreciation in the value of her land brought about by mere fanciful unfounded fear. We do not think the petition is subject to this objection. The petition alleged the size and kind of the dam that had been constructed and the amount of water that it impounded. It alleged that a part of the dam was erected on a gravel base, and was liable to break at any time. It also further alleged that the dam was equipped with a number of large spillway gates, and that a new channel had been constructed to carry off the overflow from the lake, that said channel was not sufficient in size to carry such overflow water, and that on account of the manner in which such overflow water and the levees in connection therewith had been constructed the overflow water from such spillway was caused to flow over appellee's land and damage the same. We think this was sufficient to present the plaintiff's contention that there was a real probability, not only that the dam might break, but that appellee's land would be overflowed by the water passing through such new channel, and that such dam presented a constant menace to appellee's property. If in fact the city had erected a dam of the size and kind described, and there was a real probability of its breaking, it would present a constant menace to appellee's land, and the appellee would have a right to recover for any depreciation in the value of her land brought about thereby. City of Abilene v. McMahan (Tex. Com. App.) 292 S. W. 525, par. 4.

■ The appellee, in addition to alleging that there was danger in the dam breaking, and that it constituted a menace to her land, alleged that the channel of the Bosque river below the dam had been changed by the city. so that, instead of running along the north side of her land as it had done prior to the construction of the dam, the new channel and levees in connection therewith had been so constructed as to force the water during flood times directly over the center of appellee's land, and that in October, 1930, after the dam had been completed, the city and its employees allowed the gates on the spillway to remain closed until the water was flowing over the top of such gates, and then opened eleven of such gates and allowed the water to overflow such new channel and to run over appellee's land with great force and violence, and as a consequence her land was greatly injured. Appellant excepted to that part of the petition wherein appellee alleged the injury caused by such overflow in October, 1930, because, as it contends, appellee was not seeking to recover special damages as the result of negligent acts committed subsequent to the erection of the dam and its appurtenances, and her damages, if any, would be the difference between the value of the land immediately before and immediately after the erection of the dam, and appellee should not be permitted to allege and prove what damages were actually caused by the overflowing of the channel after the dam was completed. It is true that, where the injured party sues for the depreciation in the value of his land caused by a permanent nuisance, he can have but one recovery therefor, and he must recover therein for all anticipated injury; and the amount of such injury is usually ascertained by taking the difference between the value of the land before the creation of the nuisance and its value immediately after the creation of the nuisance, but in this case, in order to demonstrate that the dam and its appurtenances did constitute a menace to her land and thus depreciate the value thereof,

appellee had a right to allege and prove that, since the completion thereof, actual injury had resulted to the land. City of Amarillo v. Ware (Tex. Com. App.) 40 S.W.(2d) 57, par. 10. The court did not err in overruling this exception.

The appellee sued for the damages caused by the erection of the dam and its appurtenances to a 77-acre tract of land owned by her. The appellant in its answer alleged that, at the time the erection of the dam was begun, appellee owned 100 acres of land, all in one tract, a portion of which being the 77 acres described in appellee's petition; that 23 acres of said 100-acre tract was upland, overlooking the lake; that, on account of the building of the lake, the value of said 23 acres was greatly enhanced, and as a result thereof the appellee was enabled to sell said 23 acres about the time the dam was completed at a greatly enhanced price. The appellant sought to have the 100-acre tract treated as a unit and to offset the benefits accruing to appellee by reason of the enhancement in the value of the 23 acres as the result of the erection of the dam, against the damages caused to the remaining 77 acres. The appellee excepted to the answer on the ground that the two tracts were separate and the benefits accruing to one could not be offset against the damages to the other, and because appellant was undertaking to offset the damages caused by it by alleging and proving general benefits common to all property in the vicinity of the lake. The trial court sustained the exception.

The general rule is that, unless the circumstances render a division necessary, the logical and proper method of computing damages for injuries to a part of land is to treat the estate as a whole, especially where the entire acreage is used and treated by the owner as one tract. Texas Pipe Line Co. v. Higgs (Tex. Civ. App.) 243 S. W. 633, par. 4 (writ refused); Burton Lumber Corp. v. City of Houston, 45 Tex. Civ. App. 363, 101 S. W. 822, 825 (writ denied). It is likewise well settled that, where the dominion of the owner over the property is not invaded, but the land is damaged by the construction of public improvements, the special benefits accruing to a part of the land brought about by such public improvements can be considered as an offset against any damage so caused to the remainder of the tract; but general benefits accruing to the land and enjoyed in common with the public at large cannot be so used as an offset. Burton Lumber Corp. v. City of Houston, 45 Tex. Civ. App. 363, 101 S. W. 822, 825; Goldforb v. G., C. & S. F. Ry. Co. (Tex. Civ. App.) 243 S. W. 707, par. 1, and cases there cited. Since the trial court sustained the exception to the appellant's answer, we are unable to determine whether the 77-acre tract and the 23-acre tract were used and treated by the owner as a unit, nor whether the benefits accruing to the 23 acres as the result of the erection of the dam were special benefits peculiar to the property in question, or whether such benefits were general and were such as were received and enjoyed by the public at large. It is apparent that, if the 23-acre tract was rural property, useful only for farming purposes prior to the erection of the dam, but on account of the location of the lake and its proximity thereto it became lakeside property, and was useful for the erection of lakeside residences, its owner would receive a special benefit not enjoyed by the public at large. In such case it would be similar to property that has become trackage property by reason of the location of a railroad. A hearing of the facts would be necessary to determine whether or not the benefits accruing to the 23 acres were special and peculiar to the tract, or whether they were such benefits as were enjoyed by the public generally. 20 C. J. 824; 10 R. C. L. 179; Goldforb v. G., C. & S. F. Ry. Co. (Tex. Civ. App.) 243 S. W. 707, par. 2, and cases there cited. We are of the opinion that the trial court erred in sustaining the exception.

Appellant complains of the manner in which the measure of damages was submitted to the jury. By special issue No. 1 the court inquired whether the land in question had a market value "immediately preceding the construction of the dam." By special issue No. 2 the court inquired whether or not the land had an actual value "immediately preceding the construction of the dam." By special issue No. 3 the court inquired whether the land had a market value "immediately after the flood waters referred to as having occurred in October, 1930." By special issue No. 4 the court inquired whether the land in question had an actual value "immediately after the flood waters referred to as having occurred in October, 1930." By special issue No. 5 the court inquired whether the plaintiff's land "was permanently injured as a direct result of the construction of the dam." By special issue No. 8 the court inquired what amount, if any, plaintiff's land was permanently injured by the construction of the dam. In connection with special issue No. 8, the court gave the following instruction: "In determining this issue, you will consider the difference, if any, between the reasonable actual value, if any, of said land immediately before the injuries, if any, complained of and the reasonable actual value, if any, of the same land immediately after the injuries, if any, complained of, which you find was caused by the construction and operation of the dam in question, and excluding all other causes."

The jury found that the land had no market value either before the construction of the dam or after the flood in October, 1930, but that it had an actual value on each of such dates, and that the land was permanent-

ly injured as the direct result of the construction and operation of the dam in the sum of $7,700.

Appellant's first contention is that the court allowed the jury in estimating the damages to take the difference in the value of the land before the construction of the dam and its value after the flood in 1930. Ordinarily, where it is alleged that the injury to the land is permanent, the injured party is entitled to recover the depreciation in the value of the land brought about by such injury. There is no hard and set rule for measuring such depreciation. Such depreciation may ordinarily be properly measured by taking the difference between the value of the land immediately before the construction of the hazard which brought about the depreciation and the value of such land immediately after the completion of such hazard. T. & P. Ry. Co. v. Ford, 54 Tex. Civ. App. 312, 117 S. W. 201; M.. K. & T. Ry. Co. of Texas v. Anderson (Tex. Civ. App.) 194 S. W. 662, par. 5; Rosenthal v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268; St. Louis S. W. Ry. Co. v. Long, 52 Tex. Civ. App. 42, 113 S. W. 316; Dennison, B. & N. O. Ry. Co. v. Barry, 98 Tex. 248, 83 S. W. 5; City of Amarillo v. Ware (Tex. Com. App.) 40 S.W.(2d) 57; Hutchinson v. I. & G. N. Ry. Co. (Tex. Civ. App.) 111 S. W. 1101, 1105; Lyles v. T. & N. O. Ry. Co., 73 Tex. 95, 11 S. W. 782. If this measure of damages is to be applied in this case, it would be the difference between the value of the land immediately before the construction of the dam and its appurtenances and such value immediately after the completion of such improvements, and not the difference between such value immediately before the construction of the dam and its appurtenances and such value after the October flood, as submitted by the court. However, evidence of the damages actually caused by floods after the completion of the dam would be admissible to show that appellee's anticipation of damages was well founded and the probable amount of damages that would result in the future. Where the time consumed in the construction of the improvements which brought about the injury covers a long period of time, and there is a probability of an enhancement in the value of the land due to natural conditions, or of a depreciation in the value of the land due to depressed financial conditions, the jury by an appropriate charge should be instructed to take into consideration only such depreciation, if any, as was brought about by the hazard complained of, and that they should not take into consideration any depreciation brought about by natural causes.

■ The appellant next contends that at least a part of the depreciation in the value of the land was brought about by an unfounded fear that the dam would break and that the court improperly allowed the jury to consider same as an element of damages. The appellee would not be entitled to recover for the depreciation brought about by fear that the dam would break, in the absence of a real danger that the dam would in fact break. In such case it is true the owner of the property would suffer a loss, but the appellant should not be held responsible therefor. Appellant had a right to construct a dam on its own property, and, if in doing so it constructed a dam that in nowise endangered appellee's property, it would be guilty of no wrong. In order for an injured party to recover damages, there must not only be an injury to the plaintiff, but a wrong by the defendant. If the city was guilty of no wrong, there could be no recovery. The fact, however, that there was no real danger that the dam would break would not prevent a recovery for the depreciation brought about by the manner in which the floodgates and the channel and other appurtenances were constructed, nor for the depreciation brought about by the cutting off of the underflow or by other causes alleged in plaintiff's petition. The court, by appropriate instruction, should tell the jury that, if in fact there was no real danger that the dam would break, they should not take into consideration any depreciation brought about by such unfounded fear.

■ The appellant next contends that the appellee should be confined in her recovery to the damage between the market value of the land before and after the injury and not to the difference between its actual value on such dates. The appellee alleged that the land had no market value either before or after the injury, and the jury so found. There was evidence to support such finding. Where the injured property has no market value, the actual value of the property may be taken as the criterion for measuring the damages. Texas Power Corp. v. Kuehler (Tex. Civ. App.) 34 S.W.(2d) 381, par. 7. It would be inequitable to say that, because there is no established prevailing market for the particular kind of property so injured, the injured party must go without his relief. The rule here announced is applied in assessing damages for injuries to personal property, and we see no reason why it should not apply in assessing damages to realty. 13 Tex. Jur. 153-160; Sydney Webb & Co. v. Daggett, 39 Tex. Civ. App. 390, 87 S. W. 743; Ft. Worth & D. C. Ry. Co. v. Hapgood (Tex. Civ. App.) 201 S. W. 1040; Id. (Tex. Civ. App.) 210 S. W. 969; Ft. Worth & D. C. Ry. Co. v. Amason (Tex. Civ. App.) 239 S. W. 359; G. H. & S. A. Ry. Co. v. Harris (Tex. Civ. App.) 216 S. W. 430; Ft. Worth & N. O. Ry. Co. v. Wallace, 74 Tex. 581, 12 S. W. 227; Shell Pipe Line Corp. v. Svrcek (Tex. Civ. App.) 37 S.W.(2d) 297.

On account of the errors hereinabove pointed out, the judgment of the trial court is reversed, and the cause remanded for a new trial.