WILL D. PATTON V. DALLAS GAS COMPANY.

No. 2459.  Decided March 21, 1917.

**1.—Master and Servant—Assumed Risk—Question of Law.**

Facts in an action by an employe injured by his fall through an unguarded opening in the floor occasioned by slipping upon cinders near its edge, are considered and held to show a case where the servant should be adjudged to have assumed the risk, and to require the giving of a requested peremptory instruction to find for defendant—the servant being familiar with the premises and the opening, and the presence of the pile of cinders being obvious.  (Pp. 323-328.)

**2.—Same.**

The general principles governing the risks assumed by the servant, his knowledge of dangers and duty of care with reference to obvious conditions are discussed and stated.  (Pp. 326, 327.)

**3.—Charge—Invited Error.**

Where a request for a peremptory instruction to find for defendant has been refused, charges thereafter requested for the purpose of securing a proper submission of the issue of assumed risk (the question of leaving such issue to the jury having been already ruled on) can not be held to invite the error of submitting such issue instead of giving the peremptory charge.  (Pp. 327, 328.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

Patton sued the Dallas Gas Company for personal injuries, and recovered judgment. He obtained writ of error when, on defendant's appeal, the judgment was reversed and rendered in its favor.

*Geo. W. Donaldson, Wood & Wood,* and *Carden, Starling, Carden, Hemphill & Wallace,* for plaintiff in error.—If the master's negligence concurs with some other danger, assumed by the servant, and such negligence of the master proximately caused the injury, such assumption of risk does not prevent a recovery.  Texas Central Ry. Co. v. Bender, 32 Texas Civ. App., 568, 75 S. W., 561; International & G. N. Ry. Co. v. Moynahan, 33 Texas Civ. App., 302, 76 S. W., 803; Quinn v. Galveston, H. & S. A. Ry. Co., 84 S. W., 395; Galveston, H. & S. A. Ry. Co. v. Quinn, 104 S. W., 398; Producers Oil Co. v. Barnes, 103 Texas, 515, 131 S. W., 531.

As assumed risk is not predicated upon failure to exercise care to

inspect or to discover conditions, it follows that there was no legal obligation on the part of plaintiff to glance at the pathway before he did so, unless, in the exercise of that circumspection that a prudent man would use in that particular employment, it was necessary for him to do so. Missouri P. Ry. Co. v. Lehmberg, 75 Texas, 67; Peck v. Peck, 99 Texas, 10; Galveston, H. & H. Ry. Co. v. Hodnett, 106 Texas, 190; see list of Texas cases cited in note to 28 L. R. A. (N. S.), p. 1253.

Inasmuch as the plaintiff knew nothing of the plan put in vogue by the foreman, Dial, during the plaintiff's absence, whereby cinders were to be allowed to accumulate for several days; and inasmuch as since his return to work he had passed the cinders only once, when he found the pathway open and unobstructed, there was no opportunity to assent to the changed condition, except that which arose suddenly, and in the midst of his work, and in an emergency; there was, therefore, no assumption of risk. Texarkana & Ft. Smith Ry. Co. v. Tolliver, 37 Texas Civ. App., 437, 84 S. W., 375; So. Pac. Ry. Co. v. Winton, 27 Texas Civ. App., 503, 66 S. W., 477; Missouri, K. & T. Ry. Co. of Texas v. Milam, 20 Texas Civ. App., 688, 50 S. W., 417; Brown v. Rome Mach. & Foundry Co., 62 S. E., 720.

In the case at bar it can not be said that the danger of approaching the hole after plaintiff had an opportunity to observe that the path to the east thereof was obstructed was so open, patent and obvious as to charge him therewith. Peck v. Peck, 99 Texas, 10, 87 S. W., 248; Orange Lumber Co. v. Ellis, 105 Texas, 363, 150 S. W., 582.

To defeat the recovery by an employee against his employer, in a negligence case, on the ground of assumed risk in selecting an unsafe way when there is a safe way available, it must appear that the employee knew that the way selected was dangerous, or that the danger must be so open, patent, or obvious as to charge him with knowledge thereof at the time of such selection. There must also be no room for reasonable minds to differ as to the greater safety of the other way. Labatt on "Master asd Servant," vol. 3, sec. 1249; Tenn. Coal, Iron and R. Co. v. Herndon, 100 Ala., 451, 14 So., 287; Ambre v. Postal Tel. Co. (Ind.), 86 N. E., 871; Bailey on "Personal Injuries, Master and Servant, Employers' Liability," 2d ed., vol. 2, sec. 469.

*Burgess & Burgess, Cockrell, Gray & Thomas,* and *W. J. J. Smith,* for defendant in error.—The defendant was entitled to a peremptory instruction in its favor upon the ground that the fall and injuries to plaintiff, if any he suffered, resulted to him from risks assumed in his employment. Railway Co. v. Hynson, 101 Texas, 543; Bonnet v. Railway Co., 89 Texas, 76; Railway Co. v. Lewis, 133 S. W., 1086; Railway Co. v. Williams, 111 S. W., 196; Lone Star Brewing Co. v. Willie, 114 S. W., 191; Western Union Tel. Co. v. Burton, 115 S. W., 368-370; Mt. Marion Coal Mining Co. v. Holt, 118 S. W., 825, and authorities therein cited; Snipes v. Bomar Cotton Oil Co., 106 Texas, 181, 137 S. W., 429-430; Foreman v. Railway Co., 133 S. W., 964; Railway Co.

v. Mathis, 101 Texas, 351; Mitchum v. Chicago, R. I. & G. Ry. Co., 173 S. W., 878; Burkitt v. Key, 42 S. W., 231; Houston & T. C. R. R. Co. v. Alexander, 103 Texas, 594, 132 S. W., 119; Miller & Son v. Wayman, 157 S. W., 201; S. L., S. F. & T. Ry. Co. v. Cason, 129 S. W., 394; Anderson v. Mo. Granite & Con. Co., 178 S. W., 739; White v. Louisville Gas & Elec. Co., 179 S. W., 419; L. & N. Ry. Co. v. Fentress, 179 S. W., 421; Whitson v. Am. Bridge Co., 166 S. W., 603.

The defendant was entitled to a peremptory instruction in its favor on the ground of contributory negligence of the plaintiff proximately causing and contributing to cause his alleged fall and injuries, if any he suffered. Joske v. Irvine, 91 Texas, 574; Lee v. Railway Co., 89 Texas, 588; Sanches v. Railway Co., 88 Texas, 118; Fordyce v. Yarbrough, 1 Texas Civ. App., 260, 21 S. W., 421; Chatham & Co. v. Jones, 69 Texas, 744; Oil Co. v. Burns, 96 Texas, 577.

The plaintiff, Will D. Patton, will be conclusively presumed to know every hazardous condition about the recess hole which he could have known or learned by that ordinary circumspection and vigilance which a man of ordinary prudence would have used in approaching said empty bench hole or recess part of said hole, and he will be conclusively presumed to have known that the ashes upon which he stepped and which rolled with him and caused his fall were present upon the floor in his immediate path, because the exercise of the slightest circumspection and vigilance would have disclosed their presence to him in time to have enabled him to have avoided stepping upon them. Railway Co. v. Hynson, 101 Texas, 543; Railway Co. v. Williams, 111 S. W., 199-200; also the cases cited under first proposition above.

MR. JUSTICE YANTIS delivered the opinion of the court.

This suit was for personal injuries sustained by the plaintiff in error, Will D. Patton, in falling through an opening in the floor of the Dallas Gas Company's main building into the basement thereof. The opening through which he fell had no guard rail around it, but was entirely unguarded and unprotected against accidents such as the one which happened in this case. The opening in the floor was in the room of the gas company's building known as the "stoking room." At its side a stairway went from the stoking room to the basement. This stairway was customarily used by the employees of the defendant in error, the Dallas Gas Company, in going from the ground floor of the building to the basement. The plaintiff in error, Patton, had been in the employ of the defendant in error for several years prior to the accident, and in the discharge of his duties as such, he had often used this stairway and worked around this opening in the floor. He was entirely familiar with the opening and the danger of being injured should he fall in. Just prior to the accident the plaintiff in error had for several weeks taken a vacation from his work on account of illness. Prior to his vacation it had been the custom for employees in the basement to throw cinders therefrom through said hole and on the floor in

front of said opening, but it had not been customary to leave them there, but the rule had been to remove them. But for a few days prior to the accident the superintendent, M. N. Dial, had directed that they be not removed, he wishing to use them in doing certain cement work. On the afternoon of June 28, 1909, which was the day previous to the accident, the plaintiff in error went to the basement, in obedience to the directions of Superintendent Dial, following the superintendent down said stairway at the side of the opening. The pile of cinders in front of the opening in the floor had accumulated until it was four or five feet deep, and covered a space of perhaps ten feet in diameter. The pile of cinders was in a cone shape, slanting down towards the opening of the hole. On the afternoon of the day prior to the injury, when the plaintiff in error followed the superintendent, Dial, to the basement, he passed between said pile of cinders and said unguarded hole in the floor. There was at that time a plain pathway between the cinders and the hole, fifteen or eighteen inches wide, in which there were no cinders. The purpose of their going to the basement on the afternoon before the injury was for the plaintiff in error, at the request of Superintendent Dial, to do some gas fittings in the basement of the building. Patton did not complete the work assigned to him in the basement on the day he was directed to do the work, and the next morning, after doing some of his regular work with the engine and pump, he secured some tools and a pipe on the outside of the main building for the purpose of returning to the unfinished work which had been the day before assigned to him in connection with the gas fittings in the basement. With his tools, weighing twelve or fourteen pounds, in his hands he entered the stoking room, and at the place where he entered the heap of cinders was between him and the opening in the floor through which he afterwards fell, so that he could not see said opening when he entered the building with his tools, but he was perfectly familiar with its existence, and knew it was there. He started to the basement and in going he passed around the pile of cinders, starting to the stairway which led to the basement. During the night the pathway which was between the opening in the floor and the cinders, and which had been unobstructed, had been obliterated by some of the servants filling it with cinders during the night until the pile of cinders sloped down to a thin edge of said opening, completely destroying the pathway. This changed condition was unknown to Patton when he started on the morning of the accident to return to his work in the basement. It left no clear or safe way to cross in front of the hole and to reach the stairway, which was on the opposite side of the opening from the place where said Patton reached the opening. As Patton approached the opening at the side opposite the stairway he stepped on the cinders near the opening, and, according to his statement, he could not stop, so he attempted to step over the recess in the opening which projected into the floor from the opening two feet, and was four feet wide, to the

opposite side, and in doing so fell in, from which fall the injuries resulted for which the recovery in this case is sought.

The petition of the plaintiff in error alleged that his injuries were caused by the negligence of the defendant in error in leaving the cinders in the passway in front of the opening, which rendered it unsafe and dangerous to the plaintiff in error. The trial was by jury. A verdict was rendered by it in favor of the plaintiff in error. Appeal was taken by the defendant in error, the Dallas Gas Company, to the honorable Court of Civil Appeals for the Fifth District, where the judgment of the District Court was reversed and rendered in favor of the defendant in error, the Court of Civil Appeals holding that the trial court erred in refusing to instruct a verdict for the defendant in error, as was requested by it in writing. 147 S. W., 313. The special charge requested was as follows:

"In this case you will render a verdict for the defendant."

The finding of fact by the Court of Civil Appeals was to the effect that the testimony conclusively showed that the plaintiff in error was perfectly familiar with the construction of the stoking room and the recess or opening in the floor, having worked around it and used the stair steps which led down into the basement frequently; that the stoking room was sufficiently lighted for the pile of cinders to be seen; that the plaintiff in error, when he received his injuries, was paying no attention, and that had he looked he could have seen the cinders and ashes on which he slipped; that he knew he was close to the hole, or ought to have known it, and that he pursued his way without using any care whatever, and in doing so he assumed the risk of falling into the hole, for which reason the defendant in error was not liable in damages. This finding of fact, in our opinion, is abundantly sustained by the undisputed testimony of the plaintiff in error himself. He testified that he came into the stoking room and went due west until he struck the edge of the cinders, and then he followed the cinders in a circle, around the edge of them to a point north of the recess hole, and there he turned straight to the south, and taking one step, after he turned, he "lit on the ashes," which were an inch or two deep near the opening in the floor, and that the ashes slipped under him, and that to keep from falling he undertook to step across the recess hole or opening, and not succeeding he fell in and was injured. He further testified that he did not look to see if there were any cinders there; that he knew the hole was there with no railing around it, and that if he did not take care of himself he might fall in; that there was nothing to prevent him seeing the margin of the hole all around; that before he took the last three or four steps he could see the big hole; that he did not see the ashes until he made the step; that if he had "looked down there and stopped and looked," he, of course, could have seen them; that he could have seen the conditions if he had looked for them; that if he had been looking down he could have seen the cinders; that his mind was on his work; that he was not looking at the ceiling; that

he did not know why he did not see the cinders; that he did not know what his eyes were looking at when he reached the point where he turned, and that he did not see the cinders until he stepped on them.

It is the duty of the master to exercise ordinary care to provide his servant with a safe place to work, and the servant need not make any inspection to ascertain whether the master has discharged this duty. He may presume as much and rely upon it that the master has done so. But while this duty to furnish a safe place may be presumed by the servant to have been faithfully discharged by .the master, it does not go to the extent that the master becomes an insurer of the safety of his servant. When the master has with care discharged this duty, there often yet remain many risks of injury to the servant that are ordinarily incident to the employment, which the master is not liable for, and because thereof the servant is required in his work to exercise ordinary care for his own safety. In the exercise of ordinary care for his own safety to protect himself from injury by reason of the dangers attending the servant for which the master is not made responsible, there are often some defects arising from the negligence of the master, of which the servant may actually have knowledge, or which he must necessarily discover, without making any inspection to do so; and hence the servant is held to the rule that he is bound by the defects of which he knows, and those of which he must necessarily know; and this rule applies to defects arising from the negligence of the master as well as those defects which arise without any negligence on his part. It is true that, as a general rule, the servant does not assume the risk of injury resulting from the negligence of the master. This general rule would not be questioned. But it is equally well settled, as exceptions to the general rule, that the servant does assume the risk of injury resulting from the negligence of the master where it is actually known to him, or must necessarily have been known to him. He can not close his eyes and refuse to see a danger which is open and obvious to him, and which he would necessarily see, without attempting to make an inspection. He can not refuse to look and to see the danger which is obvious and in such plain view as that he would be compelled to see it if he exercised his sense of sight, and be acquitted of the assumption of the risk upon the ground that he did not know of the danger. In such a case he must be held to have known that which he must necessarily have known, had he looked. In the case of St. Louis S. W. Ry. Co. v. Hynson, 101 Texas, 546, 109 S. W., 930, this court, speaking through Mr. Justice Brown, said:

"The decisions of this court have established the law to be that 'the servant owes no duty of inspection. He assumes the risks of a danger of which he has actual knowledge, and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment. Since, in the absence of knowledge to the contrary, he may rely upon the assumption that the master will do his duty, he is under no obligation to look

out for the master's negligence; but he can not shut his eyes to dangers that are obvious to an ordinary man, or to an experienced man if he be experienced.' (Bonnet v. Galveston, H. & S. A. Ry. Co., 89 Texas, 76.) Hynson was an experienced man in the work in which he was engaged, therefore, must be held in law to have known what he would have discovered in the exercise of 'that circumspection that a prudent man would use in the particular employment.' The danger consisted in the failure of the railroad company to block the guard rails in its yard, which was obvious to a casual observation of the guard rail, and if Hynson had looked at it he would have seen that it was unblocked and would have known that there was danger of getting his foot caught if he walked over it. His own testimony shows that he did not think of the condition of the guard rail, nor look to see if it was blocked. His failure to exercise the diligence of thinking about his work and about the dangers that he was encountering can not excuse him from the liability of having assumed the risk of the defect which existed in the guard rails. As stated in the quotation above, one who is engaged in a dangerous service of this kind can not 'shut his eyes' to those things that would be obvious to a man who is ordinarily vigilant in protecting himself from injury. It would be impossible for the railroad company to guard a man against dangers who neither thought of nor looked when he was in the presence of danger; nobody could think for Hynson except himself. We conclude that Hynson assumed the risk of injury in performing his service in this yard. If the railroad company was negligent in not blocking the guard rails, still the risk of damage was assumed by Hynson and he can not recover on that account."

We think the undisputed evidence shows that Patton must necessarily have seen the cinders, had he looked. This being the state of the evidence we are of the opinion that the special charge by the defndant in error, requesting the court to direct a verdict for the defendant in error should have been granted. It is contended, however, if there was error in refusing said special charge, it was invited by the defendant in error by its request to give certain other special charges which it requested to be submitted, leaving the question of assumed risk to the jury as a question of fact.

The record shows that the written request for a peremptory instruction in favor of the defendant in error was made and refused by the court before the special charges were requested which it is claimed invited the error of submitting the question of assumed risk to the jury. But it is contended that as the requested instruction for a peremptory charge favorable to the defendant in error was couched in general terms, and did not indicate to the trial court that it was intended to be considered upon the issue of assumed risk, there was room for the trial judge in passing upon it not to take into account the question of assumed risk, but to have only taken into account the question of contributory negligence, and the other issues in the case. We do not think this conten-

tion should be sustained. When the charge directing a verdict for the defendant in error was requested, it necessarily brought into review by the trial court every issue upon which such a charge should be given, including the issue of assumed risk. Under such a charge it was the duty of the trial court to scrutinize each issue involved in the case, and to give the charge if the proof on any of the issues entitled the defendant in .error, as a matter of law, to a verdict. The court, then, in passing úpon the charge necessarily did consider the question of assumed risk, and refused to direct a verdict in favor of the defendant in error on said issue. The trial court, therefore, having fully determined not to direct a verdict in favor of the defendant in error on the issue of assumed risk, and to leave that issue to the jury, the defendant in error would not be held to have invited, and thereby to have induced, the error of submitting the issue to the jury by requesting special charges on the issue, in an attempt to have the issue correctly submitted. Invited error rests upon the doctrine of estoppel. One will not be permitted to induce the trial court to adopt and pursue a certain course of action in the trial, and after the court has done so, to then complain that the court committed error thereby. But it is conclusively shown here that the defendant in error in its special charges did not induce the trial court to submit to the jury the issue of assumed risk. The trial court had fully determined to do this before the special charges were requested, as shown by his refusal to direct a verdict for the defendant in error.

We think the plaintiff in error assumed the risk of injury, and that the judgment of the District Court should be reversed and rendered in favor of the defendant in error. This being the judgment rendered by the Court of Civil Appeals, it is in all things affirmed.

*Affirmed.*