## SHAWVER v. AMERICAN RY. EXPRESS CO. et al. (No. 8613.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 24, 1921. Rehearing Denied Jan. 21, 1922.)

1. **Railroads &#9758;274(1)—Express company not liable for injuries by stumbling over truck tongue on depot platform.**

Where plaintiff stumbled over tongue of express company's truck on depot platform in crossing platform for the sole purpose of depositing letter in mail box located thereon, the express company, which had leased a portion of the depot and used platform to convey packages between trains and express office, was not liable for injuries sustained, even if it was negligence to leave truck handle down instead of elevated.

2. **Railroads &#9758;279—Stumbling over express truck tongue on depot platform held not foreseeable.**

Where plaintiff stumbled over the tongue of express company's truck while crossing depot platform to deposit letter in mail box on platform, without following any particular route, and there was nothing to indicate that a person in crossing platform would select that particular portion in close proximity to the trucks, the express company was not liable for injuries, even if the failure to elevate the tongue constituted negligence.

3. **Railroads &#9758;278(1)—Person stumbling over express truck tongue on depot platform held negligent.**

Plaintiff, who stumbled over tongue of express company's truck on depot platform in plain view in the broad daylight, *held* contributorily negligent in failing to see the truck tongue.

4. **Negligence &#9758;136(26)—Contributory negligence usually question for jury.**

Contributory negligence, though usually a question of fact for the jury, is a question of law for the court when the proof is such that no reasonable deduction can be derived from it except that it conclusively establishes contributory negligence.

Appeal from District Court, Kaufman County; Joel R. Bond, Judge.

Suit by S. Shawver against the American Railway Express Company and others. Judgment for defendants, and the plaintiff appeals. Affirmed.

Bumpass & Osborne, of Terrell, for appellant.

Smith, Robertson & Robertson, and Gains G. Gannon, all of Dallas, for appellees.

HAMILTON, J. This suit was instituted by appellant to recover damages for personal injuries alleged to have been sustained by her as a result of negligence on the part of the American Railway Express Company.

The allegations upon which appellant sought to predicate her cause of action were substantially as follows: That on or about September 1, 1919, there was in the city of Terrell a Union Depot used by the Texas & Pacific Railroad and the Texas Midland Railroad, which depot was surrounded by a smooth raised platform covered with gravel; that adjacent to the depot there was a United States mail box, which had stood in its location many years, which was then used and had theretofore been used by the public for the deposit of mail; that the mail box was located about four or five feet from the south side of the depot building, a portion of which was occupied by the express company under lease from the railroad; that on September 1, 1919, appellant, while on her way to the mail box located as aforesaid to deposit a letter therein, stumbled over the tongue of a truck on the depot platform, which caused her to fall, with the result that she received injuries for which she sought to recover damages. It was alleged that the express company's four-wheel hand trucks were so arranged that a person going to and from the mail box would have to pass between them by reason of the position in which the express company's employees had negligently left them standing; that the trucks were so constructed that while they were not in use the tongues could be elevated, and it was the custom of the express company, as well as its duty, to leave the trucks, when they were not in use, with the tongues elevated; that the tongue of the particular truck over which the appellant stumbled had not been so elevated, but, on the day of the injury, negligently had been left down, with the result as aforesaid; that appellant stumbled over it and received painful injuries.

Appellee answered by general demurrer and general denial and by a plea of contributory negligence.

The trial was had before the court and a jury, and upon the conclusion of the evidence introduced in behalf of appellant the court peremptorily instructed the jury to render a verdict for appellee. In conformity with the verdict so rendered, judgment was entered for appellee. The substance of the appeal is comprehended in the contention that the court erred in giving a peremptory instruction.

According to the proof adduced in behalf of appellant, the Texas & Pacific Railroad and the Texas Midland Railroad intersect about at right angles in the city of Terrell. The Union Station is built in one of the angles formed by the intersection and is in an "L" shape, so that one wing of it extends north and south on the west side of the Texas Midland track and the other extends east and west on the north side of the Texas

& Pacific track. The American Railway Express Company had leased an office from the railroad companies, and this office was situated in the west end of the "L" extending east and west along the Texas & Pacific Railway Company's track. The express company used five or six four-wheel hand trucks on which to convey, between the express office and arriving and departing trains, goods which were sent and received by express. When these trucks were not in use they were ordinarily parked along the wall of that part of the building occupied by the express company; the rear of each truck being against the wall and the tongues being elevated at an angle of about 75 degrees and fastened in this position with hooks. The tongue of each truck was attached to the front axle at a point about 18 inches from the ground. Each tongue was made of a piece of timber about 6 inches wide and about 4 inches thick, and when the tongue was down, it extended out about 4 feet from the truck bed.

About 3:30 o'clock in the afternoon of September 1, 1919, appellant was on her way to the mail box mentioned in her petition to mail a business letter. She desired to mail the letter so that it would leave on the afternoon train, which came about 4 o'clock. She came upon the platform from the north and passed the baggageroom and went around on the west side of the express office toward the mail box; when she was a short distance from the mail box she stumbled over the tongue of one of the express trucks which had been left down, and there received the injury. At the time this accident occurred, three or four of the trucks were parked on the west side of the express office with their rear ends against the wall, and one was parked on the north side with the tongue toward the wall. The truck over the tongue of which appellant stumbled was a few feet from the west wall of the building, and this particular truck was standing with its front end toward the wall. There was nothing on the depot platform at the time except the trucks; the platform was an exceptionally long one; it extends west a distance of 200 or 300 feet from the west wall of the express office; the mail box was located at the southwest corner of the express office and 2 or 3 feet from the corner; the entire platform was constructed of a hard substance and the surface was uniformly smooth and hard.

The facts recited in the evidence given by appellant in her own behalf, with slight variations so far as they pertain to the description of the premises where she alleged she was injured, are substantially the same as the facts to which the other witnesses testified. We accordingly state her testimony bearing upon this feature as reflecting the

236 S.W.—51

facts upon which reliance is placed to constitute liability arising from alleged negligence. That portion of her testimony is as follows:

"In September a year ago, I received an injury on the platform at the Union Station, right back of the express office, which is on the southwest corner of the Union Station. I went there to mail a business letter which should have gone off the day before, but I went that afternoon to mail it so it would go off on the afternoon train, which came probably about 4 o'clock then, and I went there about 3:30, I think, to mail this letter which was going west. I passed the baggage room on the platform and came up and passed around on the west side of the express office to the mail box. I did not mail the letter; I do not know how close I came to the mail box, as I have never been there since and have never asked anybody to measure the distance. I was only a short distance from the box, however. One of the express trucks had its tongue down—it was broken—and I didn't see it; there was a passway between the trucks; some of them were against the wall and some were out on the west side, and I usually went through that passway, and I wasn't expecting it, of course, and one of the trucks had the hook broken off the tongue and the tongue was down across the 'walkway' which I invariably went through; I don't remember having walked around the trucks but a few times, and I have been there many, many times to mail letters; and as I went through this passway I caught my foot under the truck tongue which was down and I fell. I have been to the station many, many times for many years to mail letters, and I know that the usual custom of the express company is to keep the truck tongues hooked up; that is the first truck tongue I ever saw down; there was usually a passway—some trucks against the wall and some out, and there was usually a passway through there, and on this occasion I caught my foot under the tongue and fell. I suppose the other trucks had their tongues hooked up, as that was the only one I stumbled over; I suppose it was broken.   *   *   *

"On the day of the accident, I went around the north side of the platform, where the switch track is, instead of going around the south side, because it is nearer that way and there is a passway and I have always gone that way. That platform is immense. The street extending east and west and intersecting the Texas Midland Railroad is Moore avenue; it is the main business street of the city. From the Texas Midland Railroad westward down that platform it must be something like 300 feet. The depot is a good-sized building; the mail box is at the southwest corner of the depot building, and is really on the south side, towards the Texas & Pacific Railway. I really do not know how far it is from the northwest corner of the express office to the switch track; I know nothing about dimensions. The platform is made of a hard substance of some kind, cemented some way; it will not show tracks of any kind—it is a hard substance. When I spoke of a 'passway' I was not speaking of any passway that was marked out there on the platform; there was no path worn there on the platform surface. I meant that there was a

passway between the trucks. I usually went that way because it was the nearest way. I suppose some of the trucks were backed against the wall of the express office, as I saw some against the wall and some on the right, but I don't know how many; the distance between the trucks against the wall and those on the right was something like three or four feet. I was alone that day. I wore glasses that day; I usually wear them when I go out. My eyesight is pretty good to see things close to me, and I have to wear glasses to see things at a distance. Yes; I can see your left hand, which is a distance of a little over two steps from me. At the time I came along there, I didn't see anything else on the platform besides the trucks, because it wasn't train time. I did not go on the depot platform for any purpose connected with the railroad company or express company; I simply went on the platform for the purpose of mailing a letter. I came from the north and went south; the truck I stumbled over was nearer to the southwest corner of the express office than it was to the northwest corner; I was nearly to the mail box when I stumbled. I don't remember seeing anything at all on the platform west of the trucks; the platform was all open and clear; there was nothing to prevent me from walking around all the trucks, but it was nearer to go through between them. There were no boxes or obstacles of any kind on the platform; there was nothing there except the trucks, and it was the truck tongue that I fell over; it was across a space that was three or four feet wide."

Geo. Nelson, a witness for appellant, testified that the accident occurred about 3 o'-clock in the afternoon; that it was a clear day; that the platform surrounding the building was a very large one; and that there was nothing on it at the time of the accident except the five or six hand trucks used by the express company, all of which were parked against the walls of the building, with the exception of one, the tongue of which was down, and over which appellant stumbled and fell.

The evidence fails to disclose under what circumstances the mail box was located on the premises of the railroad company. It merely shows the box was there and had been there many years. However, the reasonable inference to be drawn is that the appellee had nothing to do with locating it where it stood, and certainly had no interest whatever in its being there, beyond the general interest possessed by the public at large. If any reciprocal right and duty existed solely in relation to the original act of locating it where it was, then such right and duty, it seems certain to us, must be held to relate to the owners of the premises rather than to appellant, the mere lessee of a portion of the building near which it stood.

[1] The mail box had no connection whatever with appellee's business and bore no particular relation to it. There was nothing in the nature or purpose of its use which was of concern to appellee or which in the remotest way clothed appellee with any dominion over it. Accordingly, appellant and all others who went upon the depot platform exclusively to mail letters at the box, and for no business whatever with the express company, were there not as its invitees, but, at most, only as licensees. If, therefore, the truck handle over which appellant stumbled was left down because of some negligence on the part of appellee's employees, such passive negligence did not pertain to any duty of appellee to appellant. Ry. Co. v. Matzdorf, 102 Tex. 44, 112 S. W. 1036, 20 L. R. A. (N. S.) 833, 132 Am. St. Rep. 849. The record contains no suggestion of any active negligence. It appears that no ordinance of the city of Terrell required that the handles of such trucks should be kept fastened up when they were not in use, and leaving the handle down was a violation of no law.

[2] Appellant, in going the particular route she followed, chose it only because to do so made the distance slightly less. In so doing she walked in no beaten path, for there was none. The wide expanse of the whole platform was open to her, obstructed by no impediment aside from the small group of trucks, and the surface was uniformly the same everywhere. There was nothing to indicate that a person in traversing the platform would select that particular portion of it in close proximity to the trucks. This being true, we think that, even if leaving the truck handle down should be conceded to constitute negligence, still it would not be negligence in a legal sense so as to support an action, because an injury of the kind suffered could not reasonably have been anticipated under the circumstances. Ry. Co. v. Bigham, 90 Tex. 225, 38 S. W. 162; Ry. Co. v. Benhe (Com. App.) 231 S. W. 354.

[3] We also think that, if appellee's negligence, in any view, could be said to have been established by the evidence, at the same time it should be said that appellee's plea of contributory negligence was also established by it, precluding a recovery in any event. The position of the truck tongue and the entire situation was open to plain view. The accident occurred in the broad light of day. There was nothing to prevent appellant from seeing the truck tongue had she used ordinary care to look as she walked. In these circumstances, she must be presumed to have seen an object which she necessarily must have discovered by the ordinary use of her sense of sight. Ry. Co. v. Hynson, 101 Tex. 546, 109 S. W. 929; Patton v. Dallas Gas Co., 108 Tex. 321, 192 S. W. 1060.

[4] While contributory negligence is usually a question of fact for the jury, as contended by appellant, still it is so only because the proof is of the quality which presents an issue of fact. In this respect it is as any other question of fact. And when the proof

is such that no reasonable deduction can be derived from it except that it conclusively establishes contributory negligence, it is then resolved into a proposition of law subject to the exclusive control of the court.

Cases involving the liability of municipal and other corporations under the issue of contributory negligence in connection with street .obstructions wherein the question was held to be one of fact for the jury, are cited by appellant as authority against the conclusion which we express upon this feature of the instant case. The cases cited are the following: Butler et al. v. City of Conroe et al., 218 S. W. 557; City of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693; City of Sherman v. Nairey, 77 Tex. 291, 13 S. W. 1028; City of Palestine v. Addington, 75 S. W. 322; Texarkana Telephone Co. v. Burge et al., 192 S. W. 807; City of Dallas v. Webb, 22 Tex. Civ. App. 48, 54 S. W. 398. That such cases are to be distinguished upon the facts as well as in other respects we think clearly appears. We apprehend that the profession will encounter no difficulty in perceiving the general distinctions we have in mind as existing between those cases and that before us, and, accordingly, it would be a useless extension of treatment of this case to indulge here in marking out those distinctions.

The judgment is affirmed.