**FORT WORTH & D. C. RY. CO. v. AMASON et al. (No. 1917.)**

(Court of Civil Appeals of Texas. Amarillo. March 1, 1922. Rehearing Denied April 5, 1922.)

1. Evidence ⬅️601(4)—Evidence held to show grass land damaged by fire had no established market value.

In an action for damages to grass land by fire set out by sparks from a railroad engine, evidence *held* sufficient to show that there had been no sale of grass land of the kind involved in that vicinity at about the time of the fire and that there was no established market value.

2. Evidence ⬅️113(1)—Intrinsic value admissible where no market value.

Where grass land damaged by fire had no established market value, its intrinsic value for the purposes for which it had been used was admissible.

3. Evidence ⬅️488, 568(4) — Testimony of stock farmers familiar with kind of grass land injured by fire held admissible and sufficient to establish intrinsic value.

In an action for damages to grass land, from fire set by sparks from a railroad engine, testimony of plaintiff and another, both stock farmers, familiar with the kind and class of grass destroyed, *held* admissible and sufficient to establish the intrinsic value of the land for the purposes for which it had been used, the witnesses being qualified to testify.

4. Railroads ⬅️482(2) — Degree of proof of origin of fire stated.

In an action for damages from fire set by sparks from a railroad engine, it is not necessary that the evidence should exclude all possibility of another origin, but it is sufficient that all the facts and circumstances fairly warrant the conclusion that the fire did not originate from another cause.

5. Railroads ⬅️482(2)—Finding of origin of fire sustained.

In an action against a railroad company, for damages to grass land by fire evidence *held* sufficient to warrant a finding that the fire was set by sparks from a passing engine.

6. Appeal and error ⬅️1062(1)—Issue as to whether fire was set out by one of defendant's engines held harmless if too general.

Submission of issue as to whether plaintiff's grass was set on fire "by one of defendant's locomotive engines" on or about a certain date, *held* harmless, if erroneous as permitting the jury to find for plaintiff if the fire was set out by any of defendant's engines, where it was not charged that the fire was set by any particular engine, and the evidence showed that two engines passed the scene of the fire shortly before it was discovered.

7. Appeal and error ⬅️1064(1)—Trial ⬅️215 —Giving general charge in addition to special issues held error and prejudicial.

Giving general charges in addition to special issues is error and prejudicial where the

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

general charge informs the jury what would be the result of their findings.

**8. Appeal and error ☞882(12)—Error in giving general charge in addition to special issues held not invited.**

Where the court submitted the case on special issues, and in connection therewith erroneously charged the jury as to what their finding should be on facts set out in several paragraphs of a general charge, to which appellant objected, appellant, by asking special charges with a view of correcting the several paragraphs of the general charge, did not invite the court's error in giving such charge, where such special charges were presented after the court had prepared his main charge.

**9. Appeal and error ☞928(1)—In absence of contrary showing, appellate court must presume that statutory procedure was complied with.**

In the absence of an affirmative showing to the contrary, the court of appeals must presume that the court prepared his charge and submitted it to the parties, who then prepared their objections thereto and their special charges, as contemplated by Vernon's Sayles' Ann. Civ. St. 1914, arts. 1971, 1973.

**10. Trial ☞350(5)—No error in refusal of issues as to whether wind carrying sparks was unusually high.**

In an action for damages to grass land, from fire set by sparks from a railroad engine, where it was not alleged or proved that the wind was so unusual as not to be anticipated, the court did not err in refusing to submit issues as to whether there was an unusually high and unprecedented wind blowing at the time of fire and whether such wind caused the sparks to set fire to the grass.

### On Motion for Rehearing.

**11. Trial ☞280—Objections to general charge held to go to the substance and point out errors of law.**

Objections to a general charge as placing a greater burden on defendant than the law requires, "in that it charges," etc., and as indicating to the jury the result of their verdict from their answers to special issues, go to the substance of the general charge and point out errors of law.

**12. Appeal and error ☞882(12) — Error in giving general charge not invited by requesting special charges to correct same after objections overruled.**

A party does not invite an error in giving a general charge in a case submitted on special issues, by requesting special charges to correct errors of law in the general charge after objections thereto have been overruled.

**13. Trial ☞423 — Error in giving general charge not waived by requesting special charges curing defects after objections overruled.**

Where the trial judge, by overruling objections to a general charge in a case submitted on special issues, indicated its determination to give such charge in connection with such issues, appellant did not waive the error by submitting special charges curing defects of law in the charge given.

Appeal from District Court, Hartley County; Reese Tatum, Judge.

Action by L. L. Amason and another against the Fort Worth & Denver City Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Tatum & Strong, of Dalhart, for appellant.

Bailey & Richards, of Dalhart, for appellees.

HALL, J. The appellees filed this suit to recover of appellant damages alleged to have resulted to them by reason of fire set out by appellant's engine, in which 2,400 acres of grass land were burned over. They sue for the value of the grass, damages to the turf and sod, and for the value of posts burned and wire damaged by the fire. Plaintiff sets out the intrinsic value of the grass and alleges the difference in the market value of the land immediately before and immediately after the fire. Defendant answered, alleging that its engines were properly constructed and equipped with the latest approved appliances to prevent the escape of sparks; that its employees were competent and skilled and exercised ordinary care in operating said engines and specially alleged that, at the time of the fire—

"there was an unprecedented and unusually high wind blowing, and if it should be shown that said fire was set out by sparks from appellant's locomotives, it was due to this unprecedented and unusually high wind in conveying said sparks from said locomotives to the plaintiff's land, and not due to any negligence on the part of the defendant or its employees, which was an act of God and which was the proximate cause of said fire. Wherefore, the defendant is not liable."

This is a sufficient statement at this time of the issues made by the pleadings.

The first proposition attacks the ruling of the court in permitting L. L. Amason and E. J. Hudson, over appellant's objections that they had not sufficiently qualified to state their opinions and were not acquainted with the value of the land just before and after the fire, to testify that the land was damaged so much per acre, and that the land was worth so much less after the fire than it was before. The record shows, with reference to this issue, that L. L. Amason testified in part that he had not seen any land where the grass had been burned off selling in that neighborhood.

"I know what it was worth to me; I guess you would call it my opinion about that; I have not seen any land selling where the grass had been burned off of it in this same condi-

tion since the burning, not any before or since, in that neighborhood. * * * Now this fire that consumed the grass on this 2,400 acres just before the fire, the ground was covered with it. It was in good condition; it was smooth; it was sandy land, had good coat of grass on it. After the fire cleaned this off, killed it, for some cause it isn't as good as the other grass now. The land is a little more rough and bumpy than where it didn't burn. Since the fire that land hasn't produced the same amount of grass as it produced before the fire, hasn't got half the grass on it where it burnt, as where it didn't burn. Prior to the fire there were some weeds on the land that were burnt but not so many as there was afterwards. This is my first experience with reference to estimating the damage to turf or sod with reference to fire. Twenty-five cents was the actual value of the grass that was on the land. I know the market value of that land, leaving out the grass value, just prior to and after the fire; that is the difference between the market value of the land on the market just prior to and just after the fire. I know, so far as that is concerned, that it is not worth as much now as it was before, but to state just the difference, the value of the land, the market value of the land, just prior to and just after the fire, per acre, leaving out the grass, all I could do would be my opinion of the market value of the land. I don't know of any selling around there. It is damaged anywhere from $2.50 to $1 per acre. The land was worth $2.50 less after the fire than it was before."

The witness Hudson testified on this point in part as follows:

"I have lived a little over 4 years in Hartley county, but have resided in the Panhandle 14 years. During that time my business has been that of stock farmer. I have had stock all the time. I reside now right north of the Amason ranch. I know L. L. and L. P. Amason. I have had occasion to go over the burned area pretty well. I have been in his pasture often; have been in there a number of times prior to the fire. I think I was familiar with the kind and class of grass contained in that pasture prior to the fire. I have had occasion to go over the burned area since the fire. I have some land that is like his, some that is tight grass and some mixed grass. At this time you can tell the difference in the grass on the burned area and that that is not on the burned area. There is a right smart difference in the productiveness of the two lands. As to how this difference shows, the sedge grass in the old ground that has not been burned is higher and thicker on the ground and there is more of this little straight grass— I don't know what you call it—and a whole lot more weeds where it has been burned and the grass is not as thick on the ground. As to the effect the burning of grass has on grass with reference to its value for pasturage purposes, it hurts it right smart. Takes a good while to get the sod back. The difference in the grass, the new grass, that is coming up and the old grass, the new grass doesn't seem to have as much body to it when it dries up. It has run high and when it dries up, when it dries down, there isn't as much to it as this old grass. Just

prior to that fire I don't know whether there was any market for that land or not. That land was damaged for pasture purposes by fire. As to how much it was damaged, how much was the turf or sod damaged on account of the fire, I will say at least $2 per acre. That is based altogether on my personal opinion about it. When I state that value that is just my personal opinion. I don't remember seeing any land that was selling of the same kind and character and the same kind of grass for pasture purposes as Mr. Amason had prior to the fire. I don't know how much land was bringing on the market at that time, and I saw no land in that condition that was selling, land that was burned after March 14th. I don't know what it was worth or what it would bring on the market."

[1-3] The appellees alleged that the land in question was a part of their ranch and was used for grazing purposes. The evidence is sufficient to show that in that vicinity, and at about that time, there had been no sale of grass land of the kind and character involved and that there was no established market value. Under such circumstances, the intrinsic value for the purposes for which it had been used was admissible. We think the evidence is sufficient and that the witnesses were qualified to testify. Ft. Worth & Denver City Railway Co. v. Hapgood (Tex. Civ. App.) 210 S. W. 969; H. & T. C. Ry. Co. v. Ellis (Tex. Civ. App.) 160 S. W. 606; Ft. Worth & Denver City Ry. Co. v. Hapgood (Tex. Civ. App.) 201 S. W. 1040; G., H. & S. A. R. Co. v. Harris (Tex. Civ. App.) 216 S. W. 430.

[4, 5] Under the second, third, and fourth propositions it is insisted that the evidence is not sufficient to charge appellant with being responsible for the fire. The record contains a great deal of evidence tending to show that the engines were equipped with the latest and most approved appliances for arresting sparks, and that they were handled and operated by competent and skillful engineers. It is further shown that the fire originated about 170 or 180 feet from the center of the track. The rule stated in Moose v. M., K. & T. R. Co. (Tex. Com. App.) 212 S. W. 645, is that although it is necessary to trace the fire to the railroad, it is not necessary that the evidence should exclude all possibility of another origin but it is sufficient if all the facts and circumstances fairly warrant the conclusion that the fire did not originate from some other cause. It was shown that two trains passed the scene of the fire within a few minutes of each other. One of the employees on the last train testified that the fire was burning when his train passed. This would seem to indicate that, if appellant was responsible for the damages, the fire was set out by the first engine. The witness Tom Belcher testified that he was in that vicinity on that day and about 5 o'clock in the afternoon; that he was driving

an auto and hurried across the track in front of the second train on his way down to where an oil well was being drilled; when he reached the well another party said, "Tom, look what a fire;" that he looked toward the north and saw the freight train coming around a curve about opposite to where the fire broke out; that he saw no one about the place of the fire. He further testified:

"I didn't see any one in the road besides myself. If there had been any one there I could have seen them, but if there was a car behind me I could not have seen it for the dust. I didn't pass anybody. I didn't see anybody and nobody passed me along there. The fire would not have burned backward; the wind was blowing too stiff. The grass was burned up to the fire guards except where the wind blew it out. I didn't notice this train was going south with reference to making smoke or anything like that; you couldn't tell anything about it for the wind was so high it blowed the smoke away from the smokestack; it was giving out smoke. From where I was on the railroad track there was nobody to the north or south of me. If there had been anybody there I could have seen them—sure I could if there had been anybody in sight. When you cross the railroad to the south of that point, if it is direct across the track, there is a rise and if you run on up the road you can see anybody coming, but I didn't see anybody coming up the road; in fact, didn't see anybody until I went home; it was quite windy that day."

R. E. Simmons testified that he lived in Channing and remembered the occasion of the fire in question; that at that time he was going to Dalhart and left Channing about 4 o'clock in the afternoon; that in going to Dalhart he traveled the Colorado to Gulf Highway, running parallel with the railroad, and saw the fire; that the fire caught in three different places right at the fire guard. He further said he saw a freight train there just as he drove over the grade going towards town; that he didn't pass anybody on the road as he went on to Dalhart. He testified that he was driving to Dalhart for the purpose of meeting a Rock Island train; that he crossed the track just ahead of No. 8, which was a passenger train; that he was driving a car which was a pretty fast car. We think this evidence is sufficient to have warranted the jury in concluding that train No. 8 set out the fire.

[6] The first issue submitted is:

"Was the grass of plaintiff set on fire by one of defendant's locomotive engines on or about the 14th day of March, 1920?"

It is insisted that this issue is too general as it permits the jury to find in plaintiff's favor if it should appear the fire was set out by any of the appellant's engines. If this can be held to be error it is harmless. The appellee did not charge that the fire was set out by any particular engine. The evidence shows that engines Nos. 153 and 302 both passed the scene of the fire shortly before it was discovered. In answering this issue the jury must necessarily have found with reference to one or other of these engines.

[7, 8] By the sixth, seventh, and eighth propositions, appellant insists that the court erred in giving certain general charges in addition to the special issues submitted to the jury. This should not have been done and is reversible error, especially where the general charge as given in effect informed the jury what would be the result of their findings. T. & N. O. R. Co. v. Harrington (Tex. Com. App.) 235 S. W. 188. In answer to these propositions the appellees insist that the error of the court, in giving the general charge, was invited by the appellant. The condition disclosed by the record is, in substance, that the court submitted the case upon special issues and in connection therewith charged the jury as to what their findings should be upon the several groups of facts set out in the several paragraphs of the general charge. The record further shows that the appellant objected to this action of the court for the reasons above stated. These objections were overruled. Then we find in the record a number of special charges which were requested by appellant and which, if given by the court, would, according to the contention of appellee, have relieved the several paragraphs of the special charge of the objectionable feature of informing the jury what the result of their findings would be. It is unnecessary to determine whether the special charges would have cured the vice in the court's general charge, but the inquiry is, did appellant, by asking special charges, with a view of correcting the several paragraphs of the court's general charge, invite the error? We think not. Special charge No. 2 contains this recital: "Requested by defendant after close of testimony and before the submission of the case," which is signed by appellant's attorneys. There is further appended to the instruction the following statement by the district judge:

"It is here stated that the above and foregoing instruction was presented in open court within a reasonable time after the preparation of the court's main charge and within a reasonable time prior to the reading of the court's main charge," etc.

[9] It is difficult to avoid the conclusion from this statement that the special charges were presented to the trial judge after he had prepared his main charge. If this is true, then the appellant did not invite the error of which it complains. The Supreme Court has held several times that an instruction, requested by either party, after the trial judge had prepared his charge, does not amount to invited error or estoppel. Telegraph Co. v. Bowen, 97 Tex. 621, 81 S. W. 27;

Railway Co. v. Eyer, 96 Tex. 72, 70 S. W. 529. Vernon's Sayles' Civil Statutes, arts. 1971 and 1973, contemplate that the proper procedure is that the court should prepare his charge and submit it to the respective parties; that they shall then prepare their objections thereto and their special charges. There is nothing in this record to show that the procedure in the instant case was not in the order named, and, in the absence of an affirmative showing, we must presume that the two articles of the statute mentioned were complied with. Rishworth v. Moss (Tex. Civ. App.) 191 S. W. 843; Shipley v. M., K. & T. R. Co., 110 Tex. 194, 217 S. W. 137.

[10] The appellant requested the court to submit to the jury issues inquiring whether there was an unusually high and unprecedented wind blowing at the time of the fire, and whether the wind caused the sparks that were emitted from defendant's engine, or either of them, to set fire to the grass. There was an exception to the court's main charge for failing to submit this issue. The appellant alleges that there was an unprecedented and unusually high wind blowing. It denied the charge that there was any defect in the construction of its locomotives, or that its employees failed to exercise ordinary care, but alleged that the fire was due to unprecedented and unusually high wind, which was an act of God and which was the proximate cause of the fire and of the damage, etc. It was neither alleged nor proven that the wind was so unusual that it could not have been reasonably anticipated or provided against. In the absence of such pleading or proof the court did not err in refusing to submit the issue. G., C. & S. F. R. Co. v. Texas Star Flour Mills (Tex. Civ. App.) 143 S. W. 1179.

What we have heretofore said disposes of the remaining assignments. Because of the error of the court in giving a general charge where the case was submitted upon special issues, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

We cannot assent to the appellees' contention that the error in the court's charge was invited by appellant. The error lies in the fact that a general charge was given in a case which was submitted upon special issues. This is an error in procedure and requires a reversal. Railway Co. v. Harrington (Tex. Com. App.) 235 S. W. 188, and authorities cited. The error was specifically called to the attention of the trial judge by proper objections duly filed, and, when the objections were overruled, such action was duly excepted to, and the proceeding is correctly reflected by a sufficient bill of exceptions. This fixed the appellant's status, with reference to the error and its presentation in this court. Patton v. Dallas Gas Co., 108 Tex. 321, 192 S. W. 1060.

[11, 12] The appellant further objected because, by the general charge, the court "places a greater burden upon the defendant than the law required in that it charges," etc. And further, that the "effect of the general charge was to indicate to them [the jury] the result of their verdict from the answers they may make to said special issues." These objections go to the substance of the general charge and point out errors of law. Appellee concedes that there is error in giving a general charge in a case submitted upon special issues but insists that appellant invited the error by requesting special charges, which, it appears, were intended to correct the specific errors of law in the several paragraphs of the general charge. According to the record, the special charges were not presented to the trial judge until after the objections to the general charge had been overruled and such action duly excepted to.

[13] A party does not invite an error by filing objections to it. It is not insisted that appellant waived the error in practice by submitting special charges curing defects of law in the charge as given, and such insistence, if made, should not be sustained. Patton v. Dallas Gas Co., supra. By overruling the objections, the trial judge indicated his determination to give a general charge in connection with special issues. Just why the appellant's counsel should undertake to correct errors of law in a charge improperly given as a matter of practice, we are unable to explain unless it be that, when they saw that the trial judge was determined to do wrong, they wanted him to do it right. In other words, if the court must fall they wanted him to fall according to law and to land right side up; or it may be that they acted under the rule that an injured party should use ordinary care to prevent further injury. In either event their diligence is commendable, and they have not impaired the appellant's right to insist upon the error in this court. A., T. & S. F. R. Co. v. Pickens (Tex. Civ. App.) 118 S. W. 1133.

The motion is overruled.