PLANTERS' COTTON OIL CO. OF El PASO
v. WOODS.

No. 2369.

Court of Civil Appeals of Texas. El Paso.
Jan. 23, 1930.

Rehearing Denied Feb. 20, 1930.

Lea, McGrady, Thomason & Edwards, of
El Paso, for appellant.

Paul D. Thomas and Wm. Flournoy, both
of El Paso, for appellee.

PELPHREY, C. J.

This suit was instituted in the Sixty-Fifth
district court of El Paso county, Tex., by P.
M. Woods, as next friend of his minor son.
Claude Woods, against Planters' Cotton Oil
Company of El Paso, and Spears & Co., two
corporations.

He sought to recover damages for a person-
al injury to appellee, alleged to have been
caused by the negligence of one or both of the
defendant corporations.

He alleged that the defendants were the
owners of a certain cotton oil mill located in
El Paso county, Tex., and that at said plant
the defendants maintained what is known as
a cotton auger, consisting of a trough in the
ground formed of concrete, and in which an
auger or screw mechanism is caused to rotate
by power, so that cotton seed placed in the
trough is drawn by the auger along the trough
and into the plant; that on and before the
date of the injury Claude Woods was em-
ployed by J. C. McMillan assisting in loading,
unloading, and driving a truck owned by Mc-
Millan, who, he alleges, was an independent
contractor engaged in hauling cotton seed
from various gins to the oil mill of defend-
ants; that it was necessary in delivering the
cotton seed to the defendants for the truck
to be driven into the plant of defendants and
in close proximity to the aforesaid auger;
that on or about the 24th day of November,
1928, while unloading a load of cotton seed
into the trough, he stepped upon a pile of
cotton seed; and that his foot slipped off and
into the trough, and his foot was cut, man-
gled, and bruised by coming in contact with
the auger.

The following grounds of negligence on the
part of defendants are alleged: (1) Maintain-
ing the cotton auger without covering it with
a grating, slats, or other device which would
have prevented the limbs of persons working
around it from being caught therein; (2) in
building the trough on a level with the ground
instead of elevating it; (3) that defendants
knew of the danger of persons slipping or
falling into the trough and being injured,
and should have warned appellee of the dan-
gerous character of the cotton auger and of
the danger of slipping into it from stepping
upon the cotton seed; (4) that defendants
failed to keep the wooden covers provided by
them for covering the trough over that part
of the trough unnecessary to be uncovered at
the time of the injury; and (5) that they per-
mitted cotton seed from other trucks to ac-
cumulate in piles around said auger.

Defendants answered by a general demur-
rer, general denial, and specially pleaded that
appellee, knowing the dangerous character

of the auger and the manner of its construction, failed to use ordinary care for his own safety, and that the facts and circumstances surrounding the employment of appellee made him an employee of defendant Planters' Cotton Oil Company of El Paso, within the meaning of the Texas Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309, as amended); and that, said oil company being a subscriber under said act, appellee's right. if any, to compensation, was governed by said act.

Appellee by supplemental petition pleaded a general denial, and specially denied that he failed to use ordinary care for his own safety and that he was an employee of the Planters' Cotton Oil Company of El Paso at the time he was injured.

The cause was tried to a jury, who, in response to special issues, found that appellant was guilty of negligence in leaving the conveyor open at the time of the injury, in permitting the pile of cotton seed to be at or near the conveyor, and in failing to have a grating or slats to cover the conveyor; that each was a proximate cause of the injury; that appellee did not fail to use ordinary care to keep his foot out of the conveyor; and that $2,000 would reasonably compensate appellee for his injuries.

Judgment was rendered in favor of appellee for such sum, and the Planters' Cotton Oil Company of El Paso has appealed; the court having rendered judgment in favor of Spears & Co.

### Opinion.

Appellant predicates its appeal on the following propositions: (1) That the conveyor was a necessary part of its cotton oil mill, and, its arrangement, condition, and specific danger being well known to appellee, it is guilty of no breach of duty to him, and the court erred in refusing to instruct a verdict in its favor; (2) that the facts show appellee to have been guilty of contributory negligence as a matter of law, and that for such reason appellant was entitled to an instructed verdict; (3) that the issue as to whether appellee was an employee of appellant under the provisions of the Workmen's Compensation Act should have been submitted to the jury: (4) that the jury's finding on the issue of contributory negligence is not supported by the evidence; and (5) that the verdict is excessive.

■■ Under the first proposition, appellant contends that at most its duty to appellee was to exercise ordinary care to protect him from injury. and that the facts fail to disclose any such failure on its part, and that appellee, having the opportunity of remaining in a place of safety, but with a knowledge of the dangerous condition surrounding the conveyor. permitted his foot to get into it; the resulting injury is chargeable to him as a matter of law.

The record reveals that at the plant of appellant it maintained a concrete trench two or three feet wide, the top of which was flush with the ground; that in the trench was a revolving auger which carried the cotton seed placed in the trench into the mill; that boards were provided with which to cover the trench; that the trucks bearing cotton seed would drive over the trench on the boards and stop thereon to unload, the cotton seed either falling or being shoveled into the trench to be carried inside by the auger; that on or about November 24, 1928, appellee. a sixteen year old boy, came to the mill with a truck belonging to A. C. McMillan, by whom he was employed; that the truck was stopped with the rear wheels over the trench; and that appellee, while attempting to remove one of the side boards from the truck, stepped backward onto a pile of cotton seed, and his foot in some manner went down into the trench and was badly lacerated by the auger.

Appellee testified that there were no slats covering the auger, and that he stepped back onto the pile of seeds because he thought the side board was going to fall, that the cotton seed upon which he stepped had been left there by some other truck, and that the boards were not over the trench, and that he knew better than to put his foot into the auger.

A. C. McMillan testified that there were no slats or boards over the trench to prevent people's feet from getting into the auger when the boards were off, that he had seen slats used in other mills in Texas, and that all the other mills he knew about had the troughs raised above the level of the ground.

W. A. Hill testified that he also hauled cotton seed to the mill of appellant, that the auger did not have slats over it when the boards were off, and that he had seen troughs built flush with the ground, but that they all had iron shutters over them to drive over, which opened when a load went over them.

It is not disputed that appellee was rightfully at the place where the injury occurred and engaged in performing a task called for by his employment.

The jury found that appellant was negligent in leaving the conveyor open, in leaving the pile of cotton seed near the conveyor, and in failing to have grating or slats over the auger.

Appellant does not question the sufficiency of the evidence to support these findings, but asserts that appellee, knowing the dangerous character of the auger, was guilty of contributory negligence in permitting his foot to get into it, and in support of such contention cites the case of Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 376, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, and others. We have read with much care that opinion, and think it can easily be distinguished from the case at bar.

In the first place, the boys in that case were not in the place where the injury occurred by either the express or implied invitation of the millowner, and there is nothing in the record to show that the conveyor was constructed differently from those in other oil mills. In that case the court gave the following instruction, of which complaint was made in the Supreme Court: "It was the duty of the defendant, in the construction and operation of its machinery, to exercise such prudence and care to prevent injury therefrom as an ordinarily prudent man would exercise; and, in determining such negligence, you should consider how the defendant's hullhouse and machinery were constructed and operated, what precautions were used to prevent persons from going about or coming in contact with said machinery, and the duty of said employees in said hullhouse, or in charge of said machinery."

The court, in passing upon the correctness of its submission, said: "If it had been an admitted fact that the plaintiff's sons were at a place included in the invitation to the public, implied in the character of defendant's business, it might have been held that the charge, although too broad to be abstractly correct, was right in its application to the case."

While no such instruction was either requested or given in the present case, yet the above statement tends to show at least one of the reasons the court had in mind for reversing that case. The court further said: "It is true that those who use premises for the purpose of transacting business thereon with the public thereby invite the public to come and deal with them and therefore owe to those accepting the invitation the duty of using ordinary care to make reasonably safe for their use the place or places assigned to such uses; but even this duty does not involve in its scope parts of the establishment to which the public is not invited."

The facts which the court seemed to have in mind were that the mill was constructed as such plants ordinarily were, and that the boys were in a part of the plant to which they had not been invited.

Here the evidence shows that the conveyor was not constructed as conveyors usually are, and that appellee was clearly an invitee on that part of the premises where the injury occurred.

We are of the opinion that the evidence is sufficient to show appellant to be guilty of negligence in failing to use ordinary care in providing for appellee a safe place to carry on the work incident to his employment, and appellant's assignment is accordingly overruled.

Nor do we think the evidence sufficient to show contributory negligence on appellee's part, as a matter of law, or that the fact that he knew of the dangerous character of the auger would make the resulting injury chargeable to him alone.

■ The next question necessary for determination is that of whether McMillan was an independent contractor or an employee of appellant. If McMillan was an independent contractor, then appellee, being employed by him, did not come within the provisions of the Workmen's Compensation Act, while, on the other hand, if McMillan was an employee of appellant, then appellee's recovery for his injury would be governed by the statute.

The Commission of Appeals, Section A, in the case of Shannon v. Western Indemnity Co., 257 S. W. 522, 524, has this to say in a well-considered opinion on the question:

"There are numerous evidential elements which go to determine the quality of a contract as affecting the question of whether one is an independent contractor or not. It is seldom or ever that any one of these elements is decisive of the question. Due to lack of an accurate understanding of these elements, and their relative importance one to the other, courts have often given undue importance and probative value to different circumstances, and the result has been that there are many apparently conflicting opinions. However, the courts of our state have always shown an appreciative understanding of the question, and a careful analysis of the decisions of our state will show but little, if any, conflict. It is true, however, that in some instances the emphasis has been placed upon one evidential circumstance, while in other cases upon another circumstance.

"In spite of the many varied expressions contained in the decisions, and the reasons given for different conclusions, it may be safely said that in the last analysis all of the numerous evidential facts or elements with reference to any contract or agreement may be put into two general classes:

"(1) Those which have a direct bearing upon the question whether the person employed was free from or subject to the control of the employer with respect to the details of the stipulated work.

"(2) Those of a circumstantial description which possess a merely indirect or inferential significance with respect to that question.

"From this classification it will be seen that the outstanding quality of any contract, as touching the question of the independence of same, and which is ultimately the one most decisive of the question, is the one of the right of control of the person employed by the employer with respect to the details of the work. All other elements bear some relation to that one, and directly or indirectly indicate the presence or the absence of the right of control. For this reason it has often been

said that the supreme test of the relation is the right to control. So it may be stated in a general way that in every contract of employment, this element of right to control being present, the person employed has been held to be an employee or servant, unless all the other circumstances necessarily required a different conclusion; and when this element of control was absent, the person has been held to be a contractor, and not an employee, unless a contrary conclusion was apparent from all the other circumstances."

McMillan, who offered the only evidence as to the relationship, testified: "Last November I owned a truck that was used for hauling cotton seed. Part of the time it was used for hauling cotton seed to Spears Mill up there. This boy, Claude Woods, was working for me. As to how I was employed to haul this seed —well, I was hauling seed to every mill in the valley, wherever I could haul, and I went in down there and they told me and Mr. Hill we could haul seed from Las Cruces that the gins had, provided they didn't object, and that is the way we hauled, there was no written contract or anything drawn up, just word for word. They did not tell me how to haul or what roads to haul over, I had entire charge of how the work was done. I had no manner of accounting to them except to deliver the seed to them. I hired my own employees and paid them myself. I hired Claude Woods and paid him personally. They never paid me the money to pay him, they paid me the money for hauling, I had no definite hours to work for them. I fixed my own hours. * * * My arrangement with the mill up here was made with Mr. Browder. It was oral, by word of mouth. The arrangement was that the mill wanted me to haul seed for them, from whatever gins might have seed to come to this particular mill, for which they would pay me $2.80 a ton. There was a designated area where I was required to dump these cotton seed on the premises of the mill. * * * They generally paid me whenever I went in after it. I generally went in once a week, but I couldn't say it was every Wednesday."

The above evidence is uncontradicted in any manner, and from it the question must be decided. Appellant contends that the question should have been submitted to the jury, and assigns error to the court's refusal so to do.

Bearing in mind what was held in the Shannon Case, supra, do the facts above related show the right of control on the part of appellant over McMillan? The evidence, as we view it, shows McMillan to have been engaged in a business all his own, that of hauling cotton seed from various gins to the several cotton seed mills in the valley; that he was paid a certain amount per ton for hauling, dictated his own hours, selected the gins from which he would haul, selected his own employees, and paid them himself. In this state of the record we find nothing which could have been submitted to the jury for its determination.

We find no circumstance tending to show that appellant had any right of control with respect to the details of the work, and are of the opinion that the trial court committed no error in refusing to submit such an issue.

▇ Nor can we agree with appellant's position as to the excessiveness of the verdict. The evidence shows appellee's foot to have been badly mangled, that he was forced to spend a week in a hospital, use crutches for two months, was still suffering from lameness and stiffness in his foot at the time of trial, almost seven months after the injury, and that during that time he had been unable to work because of the condition of his foot. This assignment is accordingly overruled.

We have carefully studied the record, briefs, and authorities cited, and have concluded that the judgment should be affirmed.

### On Motion for Rehearing.

Among other questions presented by this motion, appellant questions the correctness of the statement in the opinion that "appellant does not question the sufficiency of the evidence to support these findings," in the discussion of the assignment of error to the trial court's action in refusing appellant's motion for an instructed verdict.

We were wrong in using the statement referred to, as the motion for an instructed verdict questions not only appellee's right to recover as set forth in the argument under the assignment, but also questioned the sufficiency of the evidence to show any negligence on its part. The expression was used inadvertently by the writer, and our decision was not based upon the fact that no specific assignments were presented questioning the sufficiency of the evidence to support the jury's findings on the primary negligence of appellant, as was done on the issue of contributory negligence.

We adhere to the opinion that the trial court committed no error in refusing the motion for an instructed verdict, and are of the opinion that the decision reached by us is not in conflict with the decision in the case of Stamford Oil Mill Company v. Barnes, discussed in the main opinion, nor do we think the decision in the case of Patton v. Dallas Gas Company, 108 Tex. 321, 192 S. W. 1060, cited by appellant in its motion for a new trial, should control here.

The expression complained of will be withdrawn, and the motion in other respects overruled.